[No. C009984. Third Dist. Jan. 22, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY DARNELL LAWS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel L. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Michael J. Weinberger and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

SCOTLAND, J.—Defendant was convicted by jury of first degree murder. (Pen. Code, §§ 187, 189.) On appeal, he contends the trial court committed prejudicial instructional error. Among other things, he challenges CALJIC No. 8.25, which informed the jury that murder immediately preceded by lying in wait is first degree murder, and defined the term "lying in wait."

We reject defendant's contention that CALJIC No. 8.25 is deficient because it does not require a finding that the lying in wait was done with the intent to kill or injure. As we shall explain, Penal Code section 189, which defines murder of the first degree to include murder perpetrated by means of lying in wait, does not require the lying in wait to be done with the intent to kill or injure. All the statute requires is that the waiting and watching was done with the intent to gain advantage and take the victim unawares in order to facilitate the act which constitutes murder. We also conclude CALJIC No. 8.25 adequately instructs the jury that, to find a defendant guilty of first degree murder on a lying in wait theory, the jurors must find the act constituting murder was perpetrated by means of lying in wait.

In the unpublished portion of this opinion, we reject defendant's remaining claims of instructional error. Thus, we shall affirm the judgment.

FACTS

Michelle Harp Ovando was killed by a gunshot fired from a car in which defendant and three other men, Anthony Terrell, James Lara, and Juan Ortega, were riding. When she was shot, Ovando was standing outside of an Arco AM/PM Mini Mart (the AM/PM) with Derrick Ayson.

The prosecution's case consisted primarily of the testimony and extrajudicial statements of Ortega and Lara and extrajudicial statements made by defendant. We summarize this evidence as follows.

Earlier on the evening of the Ovando shooting, Ayson had fired several gunshots at defendant and Terrell. Intent on seeking revenge for this attack, defendant told Ortega to drive him home so defendant could get a gun.

Once he had armed himself, defendant directed Ortega to drive by the AM/PM because he thought Ayson might be there. When defendant spotted Ayson inside the AM/PM, he told Ortega to turn off the car's headlights and to slow down as they drove past the store. The group then parked in a location from which defendant was able to see Ayson inside the AM/PM.

When Ayson left the store, defendant told Ortega, "Go on. I want to wipe him down. Let's do it." Ortega pulled out of the parking space and made a U-turn so the AM/PM would be on defendant's side of the car (defendant was in the front passenger seat). As they drove by Ayson, defendant drew a handgun and fired several shots out of the open car window. Believing he had hit Ayson, defendant said, "I got him," and told Ortega, "Let's go."

When defendant was taken into custody and interviewed by Stockton police, he initially denied any involvement in the incident. After the police

confronted him with statements made by Ortega and Lara, both of whom identified defendant as the shooter, defendant admitted he had lied. Defendant confessed that he was the one who had shot at Ayson, stating: "I wasn't intending to hit [Ovando]. I admit I was intending to try to hit [Ayson] for what he did to me, . . . you know I aimed at him. It was so far. He was in the open by himself. I can't see how somebody got in the way. [¶] I'm sorry, man."

At trial, defendant retracted his confession.[1] According to defendant, the statements he had given to the police were false; even though he was innocent, he decided to "take the wrap [sic]. Just say I did it." Defendant did so because he wanted to protect Ortega and Lara who had been threatened by Terrell to keep their mouths shut or Terrell would "do like [he] did that girl." Defendant denied firing any shots at Ayson and claimed the shooting was committed by Terrell. Defendant also testified that he did nothing to assist Terrell in this act. To the contrary, defendant asserted he attempted to prevent Terrell from assaulting Ayson.

According to defendant, after Derrick Ayson shot at Terrell and defendant, Terrell said he was going to "handle" Ayson. "He was going to get back at him." However, Terrell did not indicate the retaliation would occur that night. When they went to defendant's house after the shooting, defendant intended to stay home but changed his mind when the group decided to go out cruising. After going by the home of several friends, the group drove to the location of the AM/PM and the Chili Pepper restaurant where they saw "a lot" of people. By then, Terrell had calmed down and no longer was saying that he wanted to retaliate against Ayson. As they were cruising around the Chili Pepper restaurant, one of the group saw Ayson at the AM/PM and told Terrell of the sighting. At that point, Terrell said he wanted to get Ayson. The group then drove behind the AM/PM and parked. Stating, "I'm going to blast him," Terrell asked defendant and the others to let him out of the car. Defendant refused because he had seen Ayson standing with Michelle Ovando and another girl defendant knew from school. According to defendant, he "felt" Terrell had a gun. Thus, in defendant's words: "[T]hat's why I didn't—wouldn't let him out of the car." Terrell became upset at defendant, "slammed [defendant] up in the front seat and started shooting at Derrick Ayson anyway."

Defendant called several witnesses who corroborated his claim that Terrell did the shooting. Two witnesses testified they heard Terrell admit he had

---

[1]Similarly, Ortega sought to explain away his extrajudicial statements implicating defendant in the shooting. He claimed his "head wasn't clear at the time" he spoke to the officers. According to Ortega: "[W]hen [the police] picked me up, I got scared so I was—my mind and stuff, so I was just trying to get out of there. And I was saying anything." Because Lara was unavailable to testify, his preliminary hearing testimony was read to the jury.

shot Ovando. Another of defendant's witnesses, Derrick Johnson, testified he was present when the shooting occurred and saw Terrell fire the gun.

In summation, the prosecutor argued that the jury could find defendant guilty of murder either as the shooter or for aiding and abetting the shooting. The prosecutor urged the jury to find the killing constituted first degree murder on either of two theories: it was an intentional, premeditated and deliberated killing or it was a murder perpetrated by means of lying in wait (Pen. Code, § 189).

The jury found defendant guilty of first degree murder but found untrue the allegation that he personally used a firearm during the commission of the offense. (Pen. Code, § 12022.5, subd. (a).)

DISCUSSION

I

Penal Code section 189 provides in part: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, *lying in wait*, torture, or by any other kind of willful, deliberate, and premeditated killing, . . . is murder of the first degree; . . . ." (Italics added; further section references are to the Penal Code unless otherwise specified.)

Over defendant's objection, the trial court instructed the jury on murder perpetrated by means of lying in wait as follows: "Murder which is immediately preceded by lying in wait is murder of the first degree. [¶] The term 'lying in wait' is defined as a waiting and watching for an opportune time to act, together with concealment by ambush or some other secret design to take the other person by surprise. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation." (CALJIC No. 8.25.)

On appeal, defendant wages a twofold attack on this instruction.

 First, he contends CALJIC No. 8.25 is defective because "it fails to require a finding that the act of 'lying in wait' be with the intention of killing or physically injuring the victim, as opposed to a concealment intended to accomplish some non-injurious, non-assaultive, or even benign purpose." Defendant "believes that such a homicidal or injurious purpose entertained while lying in wait is a substantive requirement of lying in wait first degree murder . . . ."

In support of this contention, defendant relies in part on *People* v. *Steger* (1976) 16 Cal.3d 539, 544-545 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206], a case which addresses the requirements for conviction of first degree murder perpetrated by means of torture. In discussing the reasons for delineating separate degrees of murder and imposing different punishments therefor, the *Steger* court noted that "society draws a *moral* distinction between murders: as morally wrong as murder per se is, some murders are more deplorable than others." (*Id.*, at p. 545, italics in original.) For example, "[s]ociety instinctively senses a greater revulsion for a calculated, deliberate murder than it does for any other type of killing. . . . Only by appropriately circumscribing the application of first degree murder can society preserve that pervasive moral distinction." (*Ibid.*)

Based on these quotes from *Steger*, defendant argues that murder perpetrated by means of lying in wait is the "moral equivalent" of premeditated murder because the Legislature's definition of first degree murder includes murder perpetrated by means of lying in wait as well as "any other kind of willful, deliberate, and premeditated killing" (§ 189).

Defendant also notes that some authorities consider murder perpetrated by means of lying in wait as the "factual equivalent" of premeditated murder. (E.g., Perkins & Boyce, Criminal Law (3d ed. 1982) The Law of Homicide, § 1, p. 130 [The words lying in wait "necessarily imply 'malice, premeditation, deliberation, and the wilful intent.' [Lying in wait] is merely a specific illustration of a 'wilful,' deliberate and premeditated murder, and it could be omitted from [first degree murder statutes] without changing the substance of the provisions."]; 2 Wharton's Criminal Law (14th ed. 1978) Murder, § 141, p. 190 ["Since a lying in wait connotes 'waiting, watching, and secrecy,' it may be regarded as the equivalent of premeditation and deliberation."].)

From these premises, defendant contends: "Seen either as the 'factual equivalent of premeditation,' or as the 'moral equivalent,' it is nonetheless clear that a narrow definition of 'lying in wait' is compelled. 'Lying in wait' without a deadly or at least an injurious intent neither factually nor morally equates with premeditated first degree murder. . . . In short, lying in wait must require an intent, while watching and waiting, to kill or to injure. Only such a requirement renders lying in wait consistent with either the 'factual equivalent' or 'moral equivalent' theories of lying in wait."

Defendant's contention fails for several reasons. First, assuming for purpose of discussion that murder perpetrated by means of lying in wait was included in section 189 as a type of first degree murder because the

Legislature concluded that murder perpetrated by means of lying in wait is a moral equivalent of intentional, premeditated murder, this does not mean the lying in wait must be done with an intent to kill or injure and, as we shall explain, the language of section 189 does not require such intent. ■ The Legislature could have concluded that an unlawful killing of a human being with implied malice aforethought (i.e., an unintended killing which results from an intentional act inherently dangerous to human life committed with knowledge of the danger to, and with conscious disregard for, human life (*People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279]) is more deplorable than second degree murder when it is perpetrated by means of lying in wait. The act of lying in wait with secret purpose in order to gain advantage and take a victim unawares is particularly repugnant and of aggravated character so as to justify harsher punishment when the lying in wait results in murder, even if the waiting and watching were not done with the intent to kill or injure.

■ Second, as defined in section 189, murder perpetrated by means of lying in wait is not the definitional equivalent of premeditated murder. An accused who committed murder perpetrated by means of lying in wait is guilty of first degree murder even if the accused did not have a premeditated intent to kill the victim. (Cf. *People* v. *Ruiz* (1988) 44 Cal.3d 589, 614 [244 Cal.Rptr. 200, 749 P.2d 854].) Defendant's contention to the contrary would render superfluous the specific inclusion in section 189 of murder perpetrated by lying in wait. (Cf. *Steger, supra,* 16 Cal.3d at p. 546.)

■ Lying in wait does not elevate every *killing* to murder of the first degree. Rather, section 189 provides that all *murder* which is perpetrated by means of lying in wait is murder of the first degree. As the California Supreme Court reiterated in *People* v. *Thomas* (1953) 41 Cal.2d 470 [261 P.2d 1]: "A 'killing' by means of lying in wait is not murder of the first degree unless it is first established that it is murder. Only then can the question arise whether it is murder of the first degree because perpetrated by lying in wait." (*Id.,* at p. 476.) "If the killing was not murder, it cannot be first degree murder, and it is immaterial that the defendant was lying in wait." (*Id.,* at p. 479.)

In California, murder is the unlawful killing of a human being or a fetus with malice aforethought. (§ 187, subd. (a).) Malice aforethought "may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.) Stated another way, malice is implied when the killing results from an intentional

act, the natural consequences of which are dangerous to human life, deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. (*Watson, supra,* 30 Cal.3d at p. 300.)

Hence, one can commit murder even when he or she has no intent to kill or injure. For example, if one simply wishes to scare another by shooting a gun in the direction of the other person intending the bullet to just miss that person (i.e., without the intent to kill or injure), the shooter can be guilty of murder if, accidentally, the bullet strikes and kills the person or a nearby innocent bystander.

Ordinarily, this type of killing would be murder of the second degree. However, if this murder is perpetrated by means of lying in wait, it is, by statutory definition, murder of the first degree. (*People* v. *Dickerson* (1972) 23 Cal.App.3d 721, 727 [100 Cal.Rptr. 533].) "[I]f a killing is murder within the meaning of sections 187 and 188, and is [perpetrated] by one of the means enumerated in section 189 [by means of lying in wait, torture, etc.], the use of such means makes the killing first degree murder as a matter of law." (*People* v. *Mattison* (1971) 4 Cal.3d 177, 182, 183 [93 Cal.Rptr. 185, 481 P.2d 193] [to be convicted of first degree murder perpetrated by means of torture, the defendant need not intend that the victim die as a result of the torture, since the intention to commit acts that involve a substantial risk to human life makes the defendant guilty of first degree murder if a death results]; *People* v. *Byrd* (1954) 42 Cal.2d 200, 208 [266 P.2d 505] ["If the killing was committed by lying in wait, it was murder of the first degree by force of statute . . . and the question of premeditation was not further involved."]; cf. *Steger, supra,* 16 Cal.3d at p. 546 [a defendant need not have had the intent to kill in order to be convicted of first degree murder by means of torture; the defendant simply must have had a willful, deliberate and premeditated intent to torture, i.e., inflict extreme and prolonged pain].)

■ As the aforesaid cases recognize, nothing in section 189 requires the lying in wait to have been done with the intent to kill. Likewise, nothing in the statute requires the lying in wait to have been done with the intent to injure. (Cf. *Thomas, supra,* 41 Cal.2d at p. 474 ["where a murder is shown to have been committed by 'lying in wait' a showing of intent is unnecessary to fix the degree"].) To impose such a requirement would, in effect, add an additional element to the crime of first degree murder when the murder perpetrated by lying in wait is committed with implied malice. It would require that the killing result from an intentional act, the natural consequences of which are dangerous to human life, deliberately performed with knowledge of the danger to, and with conscious disregard for, human life *and* performed with the intent to kill or injure. We have no authority to add

such an element; imposition of a requirement of independent proof of intent to kill or injure "would be a matter for legislative consideration." (*Ruiz, supra,* 44 Cal.3d at p. 614.)

All that is required of lying in wait is that the perpetrator exhibit a state of mind equivalent to, but not identical to, premeditation and deliberation. (*Ruiz, supra,* 44 Cal.3d at p. 615.) This state of mind simply is the intent to watch and wait for the purpose of gaining advantage and taking the victim unawares in order to facilitate the act which constitutes murder. (*Mattison, supra,* 4 Cal.3d at p. 183.) It does not include the intent to kill or injure the victim. (*Id.,* at pp. 182-183; cf. *Steger, supra,* 16 Cal.3d at p. 546.)[2]

As noted at the outset of this discussion, in instructing the jury on murder perpetrated by means of lying in wait, the trial court stated, inter alia: "The term 'lying in wait' is defined as a waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation."

Defendant suggests the instruction is flawed because the "most logical meaning the jury could discern in the 'equivalent state of mind' language, . . . would be that the duration of waiting must be such as to show a state of mind reflecting an intention to act, arrived at as a result of thought and weighing, *whatever it was the actor intended to do.*" (Italics in original.) However, this is precisely all that is required for lying in wait. If the act which the perpetrator intends to commit while lying in wait results in a killing which satisfies the elements of murder, it is immaterial whether the perpetrator intended to kill or injure.

In this case, the perpetrator killed Michelle Ovando, who was standing next to Derrick Ayson when the perpetrator intentionally fired a gun toward Ayson. Applied to the prosecution's second theory of first degree murder

---

[2]We are mindful that several cases decided years ago have characterized the "gist" of lying in wait as "watching, waiting, and concealment from the person killed *with the intention of inflicting bodily injury upon such person or of killing such person.*" (*People* v. *Atchley* (1959) 53 Cal.2d 160, 175 [346 P.2d 764], italics added; *Thomas, supra,* 41 Cal.2d at p. 473; *People* v. *Tuthill* (1947) 31 Cal.2d 92, 101 [187 P.2d 16].) However, this characterization is simply dictum based on then existing jury instructions which defined lying in wait as placing oneself "in a position where he is waiting and watching and concealed from the person killed with the intention of inflicting bodily injury upon such person or of killing such person." (See *Thomas, supra,* at p. 473.) In none of these cases was the issue posed whether lying in wait requires an intent to kill or injure. Cases are not authority for propositions not discussed or considered. (*People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 65-66 [2 Cal.Rptr.2d 389, 820 P.2d 613].)

(murder perpetrated by means of lying in wait, as opposed to an intentional, premeditated and deliberated killing), these facts establish the perpetrator killed as a result of an intentional act, the natural consequences of which were dangerous to human life, deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. Thus, the shooting constituted murder regardless of whether the perpetrator intended to kill or injure anyone. Because the murder was perpetrated by means of lying in wait, it was, by statutory definition, murder of the first degree. There was no instructional error. (*People* v. *Berberena* (1989) 209 Cal.App.3d 1099, 1108 [257 Cal.Rptr. 672].)

■ Defendant also contends that CALJIC No. 8.25 inaccurately defines murder perpetrated by means of lying in wait by focusing on the temporal relationship between the lying in wait and the murder rather than emphasizing the causal relationship. Stated another way, defendant claims the instruction is defective because it "fails to require that the 'lying in wait' be the 'means' by which the murder was accomplished."

This claim of error ignores a commonsense reading of the instruction as a whole. The instruction did not simply inform the jury that murder which is "immediately preceded by lying in wait" is murder of the first degree. The jurors were told lying in wait requires a finding that the perpetrator waited and watched for an opportune time *to act,* together with a concealment by ambush or some other secret design to *take the other person by surprise.* Intelligent jurors would construe this instruction as requiring them to find that the act constituting murder had to be accomplished by means of lying in wait in order to be first degree murder under the theory that it was perpetrated by means of lying in wait. (*People* v. *White* (1987) 188 Cal.App.3d 1128, 1138-1139 [233 Cal.Rptr. 772] [we must presume jurors are intelligent persons capable of understanding and applying a commonsense reading of instructions].)

To the extent defendant believes the instruction on murder perpetrated by means of lying in wait required elaboration or clarification to ensure that the jurors understood the requisite causal relationship between the lying in wait and the murder, he had the obligation to request the trial court to give an amplifying instruction. (*People* v. *Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627]; *People* v. *Reed* (1952) 38 Cal.2d 423, 430 [240 P.2d 590].) Because he failed to do so, he cannot complain on appeal. (*Ibid.*)

II, III\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied February 17, 1993, and appellant's petition for review by the Supreme Court was denied April 22, 1993.

---

\*See footnote, *ante*, page 786.