**Jorge L. CALDERON, Petitioner,**

v.

**Robert G. BORG, et al., Respondents.**

No. C-92-0706-CAL.

United States District Court, N.D. California.

July 1, 1994.

---

Paul Couenhoven, Berkeley, CA, for petitioner.

Jeremy Friedlander, California State Atty. General's Office, San Francisco, CA, for respondents.

### ORDER REGARDING WRIT OF HABEAS CORPUS

LEGGE, District Judge.

Petitioner Jorge L. Calderon is a prisoner of the State of California. He was convicted by a jury in state court of first degree murder. He is serving a sentence of life imprisonment without possibility of parole.

He has filed this petition for a writ of *habeas corpus* alleging violations of the United States Constitution. His basic claim, and the one discussed in this order, is an alleged violation of the Sixth Amendment and the Fourteenth Amendment, because his trial was submitted to the jury on a theory of, and with instructions on, murder by lying in wait (LIW).

### I.

The procedural history of this petition is lengthy, both in this court and in the state courts. However, most of that history is not relevant to the present status of the petition or to this court's decision. Suffice it to say that petitioner has now exhausted his state

court remedies as to the issues raised in the petition. In addition, the State of California has withdrawn its previous argument that petitioner's claims are barred by the state procedural bar rule (see filing by State of California, dated September 7, 1993). Petitioner has been granted *in forma pauperis* status, and counsel has been appointed to represent him. The State of California has opposed the petition.

The petition is now before this court after briefing, oral argument, and submission to this court of the LIW claim. Petitioner has alleged three other constitutional violations, but they have not as yet been briefed; and in view of this court's decision on the LIW issue in this order, further proceedings on those three other claims are unnecessary.

Both petitioner and the state agreed that an evidentiary hearing was not necessary on the LIW claim. The court has reviewed the petition, the state's opposition to it, the briefs, the arguments of counsel, the cited portions of the state record, and the applicable authorities. The court concludes that the petition should be granted and petitioner accorded a new trial.

## II.

As stated, petitioner's claim concerns the submission of the LIW theory of murder to the jury. Petitioner contends that he was not given constitutionally adequate notice of that theory; and that he was prejudiced in his defense at trial by the introduction of that theory to the jury after he had testified in his own behalf.

 There is an important difference in the state's burden of proof in a premeditated first degree murder charge, as compared to a LIW charge. The state can show murder by LIW if it proves the following elements: (1) waiting and watching for an opportune time to act, together with concealment by ambush or some other secret design to take the other person by surprise; (2) the lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation; and (3) that defendant performed these acts in order to take his victim

unawares and thereby facilitate his attack on the victim. *People v. McDermand,* 162 Cal. App.3d 770, 211 Cal.Rptr. 773, 783 (1984). If the state proves those elements, it need not prove the higher levels of active intent, malice and premeditation usually necessary for a first degree murder conviction. LIW "does not include the intent to kill or injure the victim." *People v. Laws,* 12 Cal.App.4th 786, 15 Cal.Rptr.2d 668 (1993). The differences between LIW and premeditated murder were stressed by the prosecutor in closing argument.

## III.

A number of Ninth Circuit cases have dealt with issues concerning California's system for charging murder without separately specifying such theories as LIW or felony murder. These have included *Gray v. Raines,* 662 F.2d 569 (9th Cir.1981) and *Givens v. Housewright,* 786 F.2d 1378 (9th Cir. 1986). More recently, the Ninth Circuit granted a *habeas corpus* petition in *Sheppard v. Rees,* 909 F.2d 1234 (9th Cir.1989), because the accused had not been given constitutionally adequate notice of a felony murder theory. Based on the trial record in that case, which need not be reviewed here, the Ninth Circuit held that "a pattern of government conduct affirmatively misled the defendant, denying him an effective opportunity to prepare a defense. 'The defendant was ambushed.'" *Id.* at 1236. That rule was subsequently reviewed in *Morrison v. Estelle,* 981 F.2d 425 (9th Cir.1992), affirming the denial of a *habeas corpus* petition. The Ninth Circuit decided that the accused there had received adequate notice of a felony murder theory before it was submitted to the jury. *Id.* at 428–29. *Morrison* seems to give a narrow interpretation to *Sheppard,* but specifically referred to the fact that there was no indication of "ambush" in *Morrison.*

 Taking the Ninth Circuit cases together, this court believes that the present state of the law in this circuit is the following: Notice to a defendant that he is being charged with murder under such a theory as LIW or felony murder need not be contained in the indictment itself. Adequate notice can be given to a defendant by means other than

the indictment itself. (This court previously applied that interpretation in *Usher v. Gomez*, 775 F.Supp. 1308 (1991); *affd.* 974 F.2d 1344 (9th Cir.1992)). The record of each case must be examined to determine whether a defendant received constitutionally adequate notice. And the adequacy of the notice is measured by whether the government's conduct misled the defendant and thereby denied him an effective opportunity to defendant himself. That is in effect an ambush rule. Both *Sheppard* and *Morrison* also hold that if there was constitutionally inadequate notice, it is not cured by a harmless error analysis. *Sheppard* at 1235, 1237–38, and *Morrison* at 428.

The inquiry for the court here is therefore whether there was a pattern of government conduct that misled Calderon at his trial and which denied him an effective opportunity to defend himself.

## IV.

The following facts are disclosed by the transcript of the state court proceedings and the record in this case:

## A.

The original charges against petitioner included LIW as a special circumstance. At the conclusion of the preliminary hearing, the municipal court judge found that there was probable cause to believe that petitioner had committed first degree murder with special circumstances. However, the judge specifically said, "I do not find that there has been sufficient evidence and it is purely speculative as to the LIW allegation."

## B.

The information was then filed in state superior court, charging petitioner with the following crimes:

Count 1: First degree murder.

Special Circumstance: In the course of a robbery.

Count 2: First degree murder.

Special Circumstance: In the course of a robbery.

Special Circumstance: Multiple murders.

Count 3: Robbery.

The charges made no reference to LIW, either as a special circumstance or as a type of first degree murder.

It is certainly the law in this circuit that the absence in the indictment will not, in and of itself, constitute inadequate notice of such theories as felony murder or LIW. However, in view of the statements of the municipal court judge, when the prosecutor did not reallege LIW petitioner's counsel might reasonably have concluded that LIW was no longer a part of the case. His defense of petitioner could then concentrate on the other theories of murder that were alleged, premeditated first degree murder and felony murder.

Petitioner admitted killing two persons while staying with them in a motel room. Petitioner's defense counsel had two strategies for trial. The first was to win the entire case by claiming self defense. Failing that, he could attempt to avoid the death penalty or life imprisonment for first degree murder by trying to establish second degree murder; that is, to raise a reasonable doubt in the jury's mind about the level of petitioner's intent to kill and about the underlying felony of robbery.

## C.

At trial, the case proceeded through jury selection and the presentation of the state's case. The state acknowledges that through those proceedings no one used the term "lying in wait." Nothing occurred during *voir dire*, pretrial discussions, or the state's case in chief to alert petitioner's counsel that, despite the judge's statements at the preliminary hearing, LIW was still an issue in the case.

■ The law in this circuit is that the evidence presented by the prosecution might be adequate notice of a theory such as LIW. *See Morrison* at pages 428–29. But there was nothing in the evidence presented by the state in its case in chief which would alert petitioner's counsel to the fact that the state was proceeding on a LIW theory.

### D.

At the conclusion of the state's case, petitioner's counsel made a motion to acquit. The transcript demonstrates that the attorneys and the trial judge focused on premeditated murder and felony murder, and not on murder by LIW. Petitioner's counsel asked the court to acquit petitioner of the robbery charge and the robbery special circumstance. He also asked for acquittal on the first degree murder charge because, "there is no showing from the evidence as it appears to me that these killings were willful, deliberate, and premeditated, and there is no showing of expressed malice." The judge and counsel discussed those elements of willfulness, deliberateness, premeditation and malice. No mention was made by the prosecutor that any of those elements were unnecessary because of the LIW theory. Nor did the judge, in denying the motion, give any indication that a LIW theory was a part of the case. The judge instead concluded that the jury could infer that petitioner had acted deliberately and with premeditation.

### E.

After the motion for acquittal was denied, petitioner then put on his defense. It is highly significant that petitioner took the stand to testify in his own behalf. He testified that he purchased the knife because he was afraid of the other two persons. He said that he killed the two persons in the motel room during the night while they were sleeping. Petitioner said that he was drunk and confused. He denied killing them to take their money. He specifically stated that he did not intend to kill them, but rather acted out of fear, confusion, and anger.

If believed by the jury, that testimony could be a defense to the premeditated murder and felony murder charges. However, that testimony by petitioner could also be sufficient to convict him of murder by LIW. He virtually confessed to the elements for that type of killing. As the California Court of Appeal said in petitioner's direct appeal, evidence that defendant "waited until his victim was asleep" is enough to convict of murder by LIW. Being unaware that LIW was a charge against him, petitioner took the stand and gave testimony which could convict him of LIW.

### F.

It was not until after petitioner testified that the prosecutor first requested a LIW jury instruction. This occurred in a preliminary conference with the judge about the jury instructions, which conference was not reported. Eight days later, the trial judge alluded to that conference when he said that both sides had previously submitted proposed instructions and that they had been briefly discussed. The judge said that he would be giving a LIW instruction, and he soon thereafter called for a ten day recess. After that recess, the defense called one witness on surrebuttal, and closing arguments began.

■ The state argues that petitioner's counsel did not object to the LIW instruction. As stated, the conference with the judge was not reported. However, during closing arguments, defense counsel discussed the LIW contention and indicated that it had been objected to: "The other thing ... and the final argument of this that I am objecting to is that with regard to LIW, which was an instruction that we objected to having given for this very reason, is he is arguing, like, the felony murder rule that there is no intent, that it looks like there is no intent to kill that's required." Petitioner's defense counsel also testified that he had objected to that instruction in the unrecorded conference with the judge. This court finds that petitioner's counsel did make a sufficient objection to the giving of the LIW instruction and to the state's use of that theory in final argument.

### G.

In his closing argument, the prosecutor extensively argued the evidence showing murder by LIW. He explained to the jury that they could find petitioner guilty of murder in the first degree either by premeditated murder, felony murder, or LIW. He argued the distinctions between premeditated murder and LIW. And the jury might unanimously find petitioner guilty of first

degree murder even if they disagreed on the basis for their finding.

### H.

The jury deliberated for approximately forty hours over a period of ten days. On the seventh day of deliberation, the jury asked, "What is the category of a homicide that results from the taking of the law into ones own hands?" The judge answered that no such category existed, and reinstructed the jury.

The jury found petitioner guilty of two counts of first degree murder, with the special circumstance of multiple murders. They did not state on what ground, premeditated or LIW, they had found him guilty of first degree murder. They also acquitted petitioner of robbery and felony murder, but found him guilty of the lesser included offense of grand theft.

### V.

■ This court concludes from this record that petitioner was misled by the prosecution and was denied an effective opportunity to prepare his defense. In essence he was "ambushed" within the meaning of *Sheppard v. Rees* and *Morrison v. Estelle*. First, the LIW theory was reintroduced into the trial, after it had been rejected by the municipal court judge as a special circumstance, without advance warning to petitioner. Second, the use of that theory eliminated important elements which the state needed to prove for premeditated murder. Third, and most important, petitioner took the witness stand and testified at a time when he had no knowledge of the LIW theory. And he gave testimony which materially incriminated himself under that theory. Had petitioner known of that theory, he might well not have testified at all.

In essence, the state prosecuted the case under theories of premeditated murder and felony murder, and not until after defendant testified and incriminated himself under a LIW theory, did the prosecutor reintroduce that theory into the case and give the jury an easier theory on which to convict. That was an ambush.

### VI.

The State of California makes several arguments that the reintroduction of the LIW theory did not deny petitioner the effective opportunity to present a defense.

The state argues that the defense had several days after being advised of the LIW instruction to prepare for the closing arguments. And the state cites to *Morrison*, where two days notice was held to be sufficient. However, the point in this case is not the period of time that elapsed. The point is the fact that petitioner had already testified without knowing that he would be confronted with the LIW theory, and gave testimony which incriminated himself under that theory.

■ The state also argues that because petitioner knew he was being charged with premeditated murder, that was sufficient notice to prepare a defense to LIW. That is, it argues that petitioner's evidence to disprove premeditation would be the same as his evidence to refute LIW because murder by LIW is the functional equivalent of premeditated murder. The state similarly argues that if the jury had accepted petitioner's claim of self defense, it would also have rejected both premeditated murder and LIW. However, it is clear that the elements of LIW and the elements of premeditated murder are different. And the issue here is not equivalence, but fair notice. A defendant who presents his defense, and particularly one who testifies in his own behalf, should not be confronted with a change in the elements later. A defendant is entitled to know what he has to meet before he takes the stand, not after. This is particularly so where, as in this case, defendant's testimony incriminated himself on the elements of LIW.

The defense theory was not just a narrow self defense claim. Rather, the defense broadly attacked the various elements that the prosecutor had to prove. While the jury could have acquitted petitioner of both types of murder if they had accepted his self defense claim, they could still have rejected that defense and deliberated separately over the different elements of murder.

As held in *Sheppard*, it is not sufficient that the state show that there was ample evidence to convict petitioner on other theories. That is particularly true here, where the jury was not required to, and did not, make any specific finding on whether they found first degree murder based upon premeditation or LIW.

## VII.

The court concludes that petitioner did not receive constitutionally adequate notice of the LIW theory, and his defense was prejudiced. Under this circuit's decisions in *Sheppard* and *Morrison*, no additional step of an analysis for harmless error is necessary.

IT IS THEREFORE ORDERED that a writ of *habeas corpus* will be issued unless the state indicates its intention to retry petitioner within a reasonable period of time.