Jorge L. CALDERON, Petitioner–Appellee,

v.

K.W. PRUNTY, Chief Deputy Warden, Respondent–Appellant.

No. 94–16251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1995.

Decided July 17, 1995.

Jeremy Friedlander, Deputy Atty. Gen., San Francisco, CA, for respondent-appellant.

Paul Couenhoven, Berkeley, CA, for petitioner-appellee.

Before: FLOYD R. GIBSON,* GOODWIN, and HUG, Circuit Judges.

## OPINION

FLOYD R. GIBSON, Circuit Judge:

A jury convicted Jorge Calderon of two counts of first degree murder with the special circumstance of multiple murder and one count of grand theft, and he was sentenced to life imprisonment without the possibility of parole. After exhausting his state court remedies, Calderon filed a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1988). In his petition for habeas relief, Calderon alleged that his defense was prejudiced because he did not receive constitutionally adequate notice of the prosecution's theory that he had committed murder by means of lying in wait. The district court agreed

---

* The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

and ordered that a writ of habeas corpus be issued unless the State of California retried Calderon within a reasonable time.

The State of California, through K.W. Prunty, Warden of the California State Prison at Calipatria, appeals. We reverse and remand.

## I. BACKGROUND

In March 1983, Calderon became acquainted with Israel Padron and Jesus Lopez. When he began socializing with them, Calderon was unaware that Padron and Lopez were involved in criminal activity. However, shortly after they met, Padron began insisting that Calderon act as his translator during drug transactions.[1] Calderon claimed that he repeatedly attempted to disassociate himself from Padron and Lopez, but that Padron threatened to kill him and his family if he refused to cooperate. Fearing reprisal, Calderon agreed to quit his jobs and work for Padron.

On March 19, 1983, Calderon gathered his belongings, purchased a knife and gloves, and drove to the motel where Padron and Lopez were staying. After Calderon accompanied Padron on another drug delivery, they returned to the motel room and joined Lopez. Calderon placed his sleeping bag between the two beds, and the three men drank beer and went to sleep.

In the early morning hours of March 20, Calderon attacked Padron and Lopez, slashing Padron in his throat and stomach and repeatedly stabbing Lopez in his chest. Calderon then took his belongings, as well as some of Padron's and Lopez's money, and fled. A few hours later, a California Highway Patrol officer stopped Calderon's vehicle because he was driving erratically and weaving between lanes. The officer noted that Calderon was unsteady, had red eyes, and smelled of alcohol, and that his feet were covered with blood. The officer searched Calderon's car and found two bags containing over $95,000.00 in cash. Authorities soon discovered Padron's and Lopez's bodies in the motel room and connected Calderon with their deaths.

The State filed a complaint that charged Calderon with the murders and included lying in wait as a special circumstance. At the preliminary hearing, the municipal court judge determined that there was probable cause to believe that Calderon had committed first degree murder with some special circumstances, but found that there was insufficient evidence of the special circumstance of lying in wait. The State then filed an information charging Calderon with two counts of murder and one count of robbery, weapon use and great bodily injury enhancements for each count, and the special circumstances of felony murder and multiple murder.

At trial, Calderon testified that he awoke on the morning in question and felt as if he had been kidnapped. He wanted to leave, but he was afraid that Padron and Lopez might "go after" him. Calderon testified that he took the knife from inside his sleeping bag and cut Padron's neck while Padron was asleep. During the ensuing struggle, Calderon repeatedly stabbed Padron and Lopez.

Twelve character witnesses testified that Calderon was a peaceful, nonviolent person, and several witnesses testified that Padron had a reputation for violence. In the prosecution's rebuttal, an individual who had been present during the drug transactions testified that Calderon appeared to get along well with Padron and that he had never heard Padron threaten Calderon.

At the jury instruction conference, the prosecution requested an instruction on the theory of first degree murder by means of lying in wait, and Calderon's defense counsel objected.[2] After hearing arguments, the trial court decided to instruct the jury on three theories of first degree murder: premeditation; felony murder; and lying in wait.

---

1. Neither Padron nor Lopez spoke English.

2. Although the initial instruction conference was not recorded, the subsequent record indicates that Calderon's counsel objected to the prosecution's interpretation of the lying in wait instruction and mentioned that "[w]e covered that Sixth Amendment Issue."

The court instructed the jury that the phrase "lying in wait" was defined as:

a waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation.

To constitute murder by lying in wait there must be, in addition to the aforesaid conduct by the defendant, an intentional infliction upon the person killed of bodily harm involving a high degree of probability that it will result in death and which shows a wanton disregard for human life.

The concept of lying in wait does not relieve the prosecution from the burden of proving that the defendant harbored malice aforethought....

After deliberating for over a week, the jury found Calderon guilty of two counts of first degree murder with the special circumstance of multiple murder. The jury rendered a general verdict and did not specify which legal theory supported the verdict. The jury acquitted Calderon of robbery, but convicted him of the lesser offense of grand theft. Calderon was sentenced to life imprisonment without the possibility of parole.

Calderon exhausted his state court remedies and filed a petition for a writ of habeas corpus. He alleged several constitutional violations, including the present argument that he was not given adequate notice of the lying in wait theory and that his defense was prejudiced because this theory was not introduced until after he had testified.

The district court noted that although the original complaint included lying in wait as a special circumstance, the municipal court judge rejected this theory at the preliminary hearing and the subsequent information filed against Calderon made no reference to lying in wait. *Calderon v. Borg,* 857 F.Supp. 720,

723 (N.D.Cal.1994). The district court found that at Calderon's trial, the prosecution reintroduced the lying in wait theory without any advance warning to Calderon. *Id.* at 725. Finally and most significantly in the district court's opinion, the prosecution reasserted the lying in wait theory after Calderon had given testimony in which he materially incriminated himself. *Id.* Therefore, the district court concluded that the prosecution had engaged in a pattern of conduct that misled Calderon and denied him an effective opportunity to prepare his defense. *Id.* at 723.

■ On appeal, we review the district court's decision to grant or deny a petition for habeas relief de novo. *Sanders v. Ratelle,* 21 F.3d 1446, 1451 (9th Cir.1994).

## II. DISCUSSION

### A. Lying in Wait

■ According to California criminal law, the phrase "lying in wait" describes both a special circumstance and a theory of first degree murder.[3] The factual situation necessary to sustain a jury's finding of lying in wait as a special circumstance is: " 'an intentional murder, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage[.]' " *People v. Sims,* 5 Cal.4th 405, 20 Cal.Rptr.2d 537, 552, 853 P.2d 992, 1007 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2782, 129 L.Ed.2d 893 (1994) (quoting *People v. Morales,* 48 Cal.3d 527, 257 Cal. Rptr. 64, 770 P.2d 244, *cert. denied,* 493 U.S. 984, 110 S.Ct. 520, 107 L.Ed.2d 520 (1989)).

■ In contrast, the theory of first degree murder by means of lying in wait does not require the intent to murder the victim, but rather, "the intent to watch and wait for the purpose of gaining advantage and taking

---

**3.** The California Penal Code provides in part: All *murder which is perpetrated by means of* a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, *lying in wait,* torture,

or by any other kind of willful, deliberate, and premeditated killing ... *is murder of the first degree....*

Cal.Penal Code § 189 (Deering 1985) (emphasis added).

the victim unawares in order to facilitate the act which constitutes murder." *People v. Laws,* 12 Cal.App.4th 786, 15 Cal.Rptr.2d 668, 674 (1993). Moreover, the lying in wait need not continue for any particular period of time, provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation. *People v. Ruiz,* 44 Cal.3d 589, 244 Cal.Rptr. 200, 212, 749 P.2d 854, 867, *cert. denied,* 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988); *Laws,* 12 Cal. App.4th at 795, 15 Cal.Rptr.2d at 675.

## B. Adequacy of Notice

■ The Sixth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, see *In re Oliver,* 333 U.S. 257, 273–74, 68 S.Ct. 499, 507–08, 92 L.Ed. 682 (1948), guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges against him.[4] In order to determine whether a defendant has received constitutionally adequate notice, the court looks first to the information. *James v. Borg,* 24 F.3d 20, 24 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994). "The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense." *Id.*

■ Calderon argues that he relied on the municipal court judge's finding that there was insufficient evidence of lying in wait and justifiably believed that the theory of lying in wait was no longer an issue in this case. He claims that because the State failed to reallege the special circumstance of lying in wait or file a charge of first degree murder by means of lying in wait, he was unaware that the prosecution would proceed on this theory.

■ As we have discussed, however, the phrase "lying in wait" describes both a special circumstance and a theory of first degree murder. The fact that the municipal court judge found that there was insufficient evi-

dence to support a special circumstance does not by implication remove this theory from the murder charge. Moreover, the information need not state the method of the murder, so long as it states the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against. See *id.; People v. Risenhoover,* 70 Cal.2d 39, 73 Cal.Rptr. 533, 540, 447 P.2d 925, 932 (1968), *cert. denied,* 396 U.S. 857, 90 S.Ct. 123, 24 L.Ed.2d 108 (1969). Therefore, the State was not required to specify "lying in wait" as a basis for the murder charge.

■ We have also recognized that a defendant can be adequately notified of the nature and cause of the accusation against him by means other than the charging document. See *Sheppard v. Rees,* 909 F.2d 1234, 1236 n. 2 (9th Cir.1989);[5] *Morrison v. Estelle,* 981 F.2d 425, 428 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1993). We disagree with the district court determination that "there was nothing in the evidence presented by the state in its case in chief which would alert [Calderon's] counsel to the fact that the state was proceeding on a [lying in wait] theory." *Calderon,* 857 F.Supp. at 723.

First, in the prosecutor's opening statement, he explained to the jury that "[t]he evidence will be Mr. Calderon cut and stabbed these individuals by surprise when they were sleeping and they were found dead wearing only their underwear." Although the prosecution did not specifically mention the phrase "lying in wait," the portrayal of these murders as being perpetrated by surprise while the victims were asleep adequately notified Calderon of the lying in wait theory.

Second, at the hearing on Calderon's motion for acquittal after the close of the prosecution's case, the prosecution again described its theory that Calderon committed the killings while the victims were asleep. The trial court noted:

---

4. "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." U.S. Const. amend. VI.

5. The court's previous ruling in *Sheppard v. Rees,* reported at 883 F.2d 795 (9th Cir.1989), was amended in its entirety by the opinion reported at 909 F.2d 1234 (9th Cir.1989).

It's apparent that both Mr. Padron and Mr. Lopez were—must have been in bed because both beds are covered with blood, as well as the surrounding area around the beds.

.    .    .    .    .

It's also inferable that Mr. Calderon waited until Mr. Padron and Mr. Lopez were asleep before striking, which would give an element of premeditation and deliberation. . . .

Contrary to Calderon's arguments, the trial court's characterization of these events was not limited to the theory of deliberate, premeditated murder. As we have noted, the California courts have defined the state of mind required for first degree murder by means of lying in wait as one equivalent to premeditation or deliberation. *Ruiz,* 244 Cal.Rptr. at 212, 749 P.2d at 867; *Laws,* 12 Cal.App.4th at 795, 15 Cal.Rptr.2d at 675. Consequently, the trial court's description of Calderon waiting until Padron and Lopez were asleep before striking was equally applicable to the charge of first degree murder by means of lying in wait.

Finally, Calderon attempts to analogize his case to *Sheppard,* 909 F.2d 1234. He contends that the prosecution engaged in a pattern of conduct that misled him about the nature of the charges against him and prejudiced his defense.

In *Sheppard,* the prosecution argued throughout the defendant's trial that the killing was premeditated and deliberate. *Id.* at 1235. "At no time during pretrial proceedings, opening statements, or the taking of testimony was the concept of felony-murder raised, directly or indirectly," *Id.* Nevertheless, on the morning of closing arguments, the trial court granted the prosecution's request for a jury instruction on the theory of felony murder. This Court concluded, and the State subsequently conceded, that Sheppard was ambushed by a pattern of government conduct that affirmatively misled him and denied him an effective opportunity to prepare his defense. *Id.* at 1236.

In the case at hand, Calderon received notice of the lying in wait theory during the prosecutor's opening statement, the evidence introduced, and the trial court's description of the crime scene. Because these events all occurred before Calderon testified, we disagree with the district court's conclusion that Calderon was unaware of the lying in wait theory when he took the stand and testified. From the information filed against him, together with the descriptions of the murders at trial, Calderon was simply not justified in believing that lying in wait was no longer an issue in this case.

Therefore, we conclude that there was no pattern of governmental conduct that misled Calderon about the nature of the charges against him and that Calderon received constitutionally adequate notice of the charges against him.

## III.  CONCLUSION

Accordingly, we reverse the district court's order granting Calderon's petition for a writ of habeas corpus and remand to the district court for consideration of Calderon's remaining claims for habeas relief.