108 F.3d 1384
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael L. ALEXANDER, Petitioner-Appellant,
v.
Larry KINCHELOE, Superintendent, Spring Creek Correctional
Center, Alaska Department of Corrections,
Respondent-Appellee.
 No. 96-35129.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1997.*
Decided March 17, 1997.
 
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The defendant, Michael Alexander, was convicted of first-degree murder and kidnapping in Alaska state court. Alexander filed a petition for a writ of habeas corpus in federal district court, claiming that his conviction was obtained in violation of his federal constitutional rights. The district court denied his petition and Alexander appeals. We have jurisdiction pursuant to 28 U.S.C. § 2253. We affirm.
 
 STANDARD OF REVIEW
 
 3
 We review a decision to deny a petition for habeas corpus de novo. Calderon v. Prunty, 59 F.3d 1005, 1008 (9th Cir.1995). We review findings of fact made by the district court relevant to that decision for clear error. Bonin v. Calderon, 59 F.3d 815, 823 (9th Cir.1995), cert. denied, 116 S.Ct. 718 (1996). A claim of ineffective assistance of counsel is a mixed question of law and fact reviewed de novo. Moran v. Godinez, 57 F.3d 690, 699 (9th Cir.1994), cert. denied, 116 S.Ct. 479 (1995).
 
 
 4
 The standard for determining whether habeas relief should be granted in any given case is whether the alleged errors "had substantial and injurious effect or influence in determining the jury's verdict." Bonin, 59 F.3d at 823-24 (quotations omitted). Trial errors which do not meet this test are deemed harmless. Id. at 824.
 
 ANALYSIS
 
 5
 A. Failure to Object to the Magistrate Judge's Report and Recommendation
 
 
 6
 There appears to be an intra-circuit conflict on whether failure to object to a magistrate judge's report and recommendation in a habeas case forecloses raising objections to the recommended disposition on appeal. See Greenhow v. Secretary of Health & Human Servs., 863 F.2d 633, 635 (9th Cir.1988) (holding that there is an irreconcilable intra-circuit conflict on the issue), overruled on other grounds, United States v. Hardesty, 977 F.2d 1347 (9th Cir.1992) (en banc), cert. denied, 507 U.S. 978 (1993). We need not address this apparent conflict at this time. We instead assume, for purposes of this appeal, that Alexander has not waived his right to appeal the district court's order.
 
 
 7
 B. Effect of the Antiterrorism and Effective Death Penalty Act
 
 
 8
 Alexander filed his petition for writ of habeas corpus in United States District Court for the District of Alaska on May 19, 1994, prior to the effective date of the Antiterrorism and Effective Death Penalty Act ("Act"). Therefore, under Jeffries v. Wood, 103 F.3d 827 (9th Cir.1996), the Act does not apply.
 
 C. Ineffective Assistance of Counsel Claims
 
 9
 To prevail on a claim that counsel's assistance was so defective as to require reversal of a conviction, a convicted defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). If this court finds that no prejudice resulted from the allegedly deficient performance of counsel, it need not determine whether counsel's performance was deficient. Id. at 697.
 
 
 10
 1. Failure to Obtain FBI Work-Up Data, Retain an Independent Forensic Expert and Have Forensic Evidence Independently Examined
 
 
 11
 Alexander has failed to show how trial counsel's failure to do these things prejudiced his defense. He does not point to any exculpatory evidence which has been discovered which would have assisted him in trial. Lucien Haag's testimony at the evidentiary hearing was substantially refuted by the testimony of FBI Agents Blythe and Webb, and Haag conceded on cross-examination that the hairs, glitter particles and fibers found in K.S.'s clothing could have come from Alexander. Haag testified that if trial counsel had sent him the hair samples for independent testing, he would have told trial counsel that the head and pubic hairs could have come from Alexander. Haag also testified that he would have told trial counsel that the glitter found in K.S.'s clothing could have come from the samples obtained from Alexander's ex-wife and Alexander's couch. Finally, Haag testified that, based on his evaluation of the evidence, he could not discount the possibility that K.S. had been in Alexander's apartment.
 
 
 12
 2. Failure to Listen to All of Alexander's Recorded Statements and Elicit Exculpatory Statements
 
 
 13
 It is undisputed that the recorded statements were hearsay. Therefore, the statements were not admissible at the trial unless the Alaska Rules of Evidence provide for their admission. Alaska Rules of Evidence, Rule 802. See also Stoneking v. State, 800 P.2d 949, 952 (Alaska Ct.App.1990). The only rule that Alexander has cited to support his argument that the statements were admissible is Alaska Rules of Evidence, Rule 106.
 
 
 14
 The alleged exculpatory statements that Alexander claims trial counsel should have elicited consist largely of Alexander's repeated denials of any wrongdoing. Alexander has failed to show how any of these statements explain, clarify or are otherwise necessary to provide context to the portion of his statement that was played to the jury in which Alexander told McCann that he had actually witnessed the abduction of K.S. Alexander has therefore failed to show that any of the allegedly exculpatory statements would have been admissible under Rule 106. The statements are inadmissible hearsay and trial counsel's failure to attempt to elicit the statements was not erroneous and did not prejudice the defense.
 
 
 15
 3. Failure to Develop and Present Evidence Suggesting that Robert M. Committed the Crimes
 
 
 16
 Trial counsel testified at his deposition that he was aware that there was a good deal of evidence relating to Robert M. as a possible suspect, but that he decided not to pursue a strategy of attempting to show that Robert M. kidnapped and murdered K.S. in favor of an approach suggesting police bias in the investigation. Prior to making this strategic decision, trial counsel conducted an extensive investigation into Robert M.'s involvement in the case and discussed emphasizing or pointing out information regarding other potential suspects, including Robert M., with Alexander. Trial counsel's strategic choice, made after a thorough investigation, is given extreme deference and is virtually unchallengeable. Strickland, 484 U.S. at 690.
 
 
 17
 Although Alexander goes into extensive detail as to all of the evidence that trial counsel failed to present at trial, he has failed to show that any of this evidence was so compelling that trial counsel's failure to present it, based on a strategic choice after a thorough investigation, was so incompetent as to overcome the presumption that the strategic choice was reasonable. Furthermore, Alexander does not indicate how he was prejudiced by trial counsel's strategy, other than that the strategy did not work and he was convicted.
 
 
 18
 4. Failure to Recognize and Develop Evidence Relating to a Red Bleed-Through Stain on Victim's Clothing
 
 
 19
 AST McCann testified at the evidentiary hearing that he noticed a reddish or pinkish light-colored stain on K.S.'s jacket at the time of the autopsy, but that he was not sure whether the stain was a bleed-through from another article of clothing or something else, or what it was from. AST Paul Bartlett testified that he noticed the stain at some point in the early stages of the investigation and that he asked the FBI to try and analyze the stain or determine its origin. Haag, Alexander's expert at the evidentiary hearing, testified that he did not attempt to analyze the stain.
 
 
 20
 Bartlett also testified that the troopers seized a multi-colored blanket from Alexander's ex-wife that was apparently red on one side and that the blanket was sent to the FBI for testing. Agent Blythe testified that he examined the blanket for hairs and fibers, but did not find any significant comparisons.
 
 
 21
 Trial counsel conceded that he failed to see the significance of the stain on K.S.'s clothing. He testified that, prior to trial, "it didn't seem to me like anything that went anywhere, anything other than speculation, anything that could be pinned down." Thus, although trial counsel was aware of the stain, he made a decision not to pursue it because he did not believe it was significant.
 
 
 22
 Alexander has failed to point to anything in the record indicating what his expert or anyone else could have done to identify the stain or its origin. The FBI was unsuccessful in its attempt to analyze the stain, and Alexander's own expert, Haag, did not even attempt to analyze the stain. Thus, his ineffective assistance claim based on the failure to develop evidence regarding the stain fails.
 
 
 23
 5. Failure to Emphasize Evidence of Unidentified Caucasian Hairs
 
 
 24
 Based on FBI Agent Blythe's findings, which directly connected Alexander with K.S., the presence of other unidentified Caucasian hairs on K.S.'s body was insignificant. Alexander fails to show how the evidence of unidentified Caucasian hairs would create a reasonable doubt as to his guilt when hairs consistent with his own were found on the victim's body. Thus, Alexander has failed to show that he was prejudiced by trial counsel's failure to emphasize that unidentified Caucasian hairs were found on the victim's clothing.
 
 
 25
 6. Failure to Argue Locard Exchange Theory (Two-Way Transfer of Trace Evidence)
 
 
 26
 There is no evidence that Alexander was prejudiced by trial counsel's failure to argue the two-way transfer theory. Agent Blythe testified that hairs are less easily transferred than textile fibers and the fact that hairs or fibers are found on one party but not on the other (i.e., on the victim but not on the suspect) does not necessarily mean that a transfer did not occur, but only that the examiner did not find evidence of the transfer. Furthermore, and most importantly, more than three months elapsed between the time of the abduction and Alexander's arrest. The passage of time alone could explain why the white hairs were not found in the Alexander samples.
 
 
 27
 7. Failure to Develop Evidence Relating to Insects Found on the Victim's Body
 
 
 28
 Trial counsel stated that he was aware of the evidence of a live true bug and wood spider that were found on the victim's body, but decided not to pursue it because "it didn't seem to run anywhere." This tactical decision was reasonable. If trial counsel had pursued this theory at trial, the State was prepared to present evidence that Alexander's brother-in-law had been hauling wood to Alexander's residence and leaving it in piles in the front yard around the time K.S. disappeared. From this evidence, the jury could have concluded that the insects found their way to Alexander's residence, and later into K.S.'s clothing, via the wood being hauled to Alexander's residence.
 
 
 29
 8. Failure to Present Evidence Regarding Urination by the Victim at the Time of Death
 
 
 30
 Testimony before the grand jury established that K.S. urinated at the time of her death due to an involuntary loss of bladder control. Alexander claims that trial counsel was ineffective because he failed to argue at trial that there was no evidence of urine on Alexander's couch, in his car, or in his residence. Alexander has failed to show how this prejudiced his defense. The strangulation that caused the urination could have occurred some place other than Alexander's residence or car.
 
 
 31
 9. Failure to Emphasize Unidentified Fingerprint on Victim's Shoe
 
 
 32
 Alexander's claim that trial counsel was ineffective because he failed to emphasize that the police found an unidentified fingerprint on the victim's shoe lacks merit. Trial counsel pointed out the unidentified fingerprint twice at trial: during cross-examination of McCann and when he called AST Bartlett as a defense witness. Bartlett testified that the troopers compared the fingerprint on K.S.'s shoe to the fingerprints of several suspects--including Alexander--with negative results. Trial counsel's handling of this evidence was not deficient.
 
 
 33
 10. Failure to Impeach Agent Babyak's Trial Testimony Regarding Alexander's Blood Type (Trooper Hard's Search Warrant Testimony)
 
 
 34
 Trial counsel knew of the blood type discrepancy, contacted a physician and had a sample of Alexander's blood drawn and tested during the course of trial. The test revealed that Alexander had type A blood. Trial counsel stated that he considered attempting to impeach Babyak's testimony by calling AST Hard, but he decided not to do so in light of the blood test results. This decision not to attempt to impeach Babyak's testimony, in view of Alexander's actual blood type, was reasonable and did not prejudice the defense.
 
 
 35
 11. Failure to Emphasize Lack of Shoe Print and Tire Tread Evidence
 
 
 36
 Trial counsel testified that he did not emphasize this evidence because he felt it was "inconclusive and not sufficiently detailed to argue one way or the other" based on weather conditions at the time of the kidnapping and because the parking lot was a high traffic area. This tactical decision was reasonable and did not prejudice the defense.
 
 
 37
 12. Failure to Present Evidence of Victim's Footprints and Walking Pattern (Trooper Lamica's Report)
 
 
 38
 Trial counsel testified that he was aware of this evidence but that he did not think it had any significance. Trial counsel's conclusion is supported by the record. AST Bartlett testified that the dogs attempted to follow K.S.'s scent from a shoe obtained from her parents about twelve hours after K.S. was reported missing. Bartlett testified that the dogs followed something to a point approximately 150 feet from K.S.'s car, then stopped. The scent or footprints followed by the dogs were never shown to have been associated with K.S. Furthermore, even assuming that the dogs were following K.S.'s scent or footprints, this does not indicate that K.S. knew her abductor. To the contrary, she could have been threatened with a weapon and left with her abductor without leaving signs of a scuffle or fight. Trial counsel's decision not to pursue this evidence was not ineffective and did not prejudice the defense.
 
 
 39
 13. Failure to Present Evidence Regarding Glitter at High School
 
 
 40
 Trial counsel admitted that this evidence was not brought out at trial, and he apparently has no recollection of why he did not do so. However, after reviewing AST Bartlett's testimony, trial counsel's failure to present this evidence is understandable and did not prejudice the defense.
 
 
 41
 Bartlett testified that it was obvious from the visual examination--both with the naked eye and using a monocular--that the glitter found at the high school was not the same as the glitter particles found on K.S.'s body. The glitter found on K.S. was identical to the glitter samples obtained from Alexander's ex-wife. Presentation of evidence that a different type of glitter was found at the school would not have helped the defense.
 
 14. Alleged Errors During Final Argument
 
 42
 Trial counsel's argument, when viewed in its entirety, was consistent with the defense theory: that someone else kidnapped and murdered K.S., that the AST was pressured into making an arrest and charging Alexander, that the forensic evidence presented by the State was inconclusive, and that Alexander had a partial alibi for March 23 and a complete alibi for March 24. Although, viewed in hindsight, trial counsel's argument might have been better, the argument, viewed in light of the circumstances at the time it was made, falls within the range of reasonably competent representation and advocacy.
 
 
 43
 Trial counsel testified in his deposition that the purpose of his closing argument was to emphasize that there was more than a reasonable doubt and that it was "an impossible case." Trial counsel argued that the State was attempting to put up a smoke screen, "attempting to clog what clearly is an impossible situation. They can't make this fit." Trial counsel argued that the evidence did not fit, that "they've got the wrong person here," and that "[i]t's factually impossible to justify what the State is attempting to do here." Trial counsel repeatedly referred to the State's burden of proof--beyond a reasonable doubt--and that it had not been met.
 
 
 44
 Trial counsel also pointed out that Alexander's statements that he had witnessed the kidnapping made no sense and that the police pressured Alexander into making the statements. Thus, trial counsel made it clear that the jury should consider the statements unreliable. The court also instructed the jury that Alexander's statements should be viewed with caution.
 
 
 45
 Furthermore, trial counsel testified in his deposition that he felt he had no choice but to concede that there was a period on March 23 that Alexander did not have an alibi in light of the State's argument that Alexander could not establish his whereabouts at 8:00 p.m. on March 23. Trial counsel's candor on this point did not hurt the defense and may have increased his credibility with the jury. Trial counsel attempted to deemphasize the lack of alibi for that period of time on March 23 by pointing out that a long period of time had passed before Alexander was arrested (three months) and it would be difficult for any person to find witnesses who could testify as to his or her whereabouts at a particular time several months prior.
 
 15. Cumulative Prejudice
 
 46
 Most of the errors alleged by Alexander are speculative and not supported by the record. Although in some areas trial counsel may have erred, Alexander has failed to show that any error prejudiced the defense. Alexander's claim of cumulative prejudice therefore fails.
 
 CONCLUSION
 
 47
 The district court's denial of Alexander's petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3