Filed 6/23/14  P. v. Williams CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KARIBU ALATIF WILLIAMS,<br><br>    Defendant and Appellant. | A138556<br><br>(Contra Costa County<br>Super. Ct. No. 51204676) |

## I.

## INTRODUCTION

Appellant Karibu Alatif Williams appeals following a jury trial which resulted in his conviction for second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)).[1]  He contends the trial court prejudicially erred in delivering to the jury two written instructions which had been withdrawn by counsel, and which, therefore, had not been orally read by the court.  We agree that the trial court erred in including these two withdrawn instructions in the jury's packet of written instructions, but we find the error to have been harmless.

Accordingly, we affirm the judgment and sentence.

---

[1]  All further statutory references are to the Penal Code, unless otherwise indicated.  In addition to his second degree robbery conviction, following a bifurcated court trial, the court found true a prior conviction and strike allegation.  Those findings are not challenged or material to this appeal.

## II.

## GENERAL PROCEDURAL AND FACTUAL BACKGROUNDS

A criminal information was filed on March 20, 2012, by the Contra Costa County District Attorney alleging that appellant had committed second degree robbery (§§ 211, 212.5, subd. (c)) of Eric Rojo. The information also alleged appellant was armed with a handgun at the time of the robbery within the meaning of section12022, subdivision (a)(1)), and that he used a handgun in the commission of the offense within the meaning of section 12022.53, subdivision (b). The information further alleged that appellant had a prior conviction of first degree burglary, a violent felony, and a "strike." (§§ 459, 460, subd. (a), 667, subd. (a)(1), 1170.12, subds. (b)–(i)).

A jury trial commenced on March 12, 2013. The evidence material to the issues before us included the following:

On the morning of January 18, 2012, Eric Rojo was walking on 24th Street in Richmond toward his class at the Richmond Civic Center. He had $48 in cash on his person—$3 consisting of three single bills in his pocket, and $45 consisting of one $5 and two $20 bills, in his wallet.

Appellant rode his bicycle on the sidewalk toward Rojo and looked at him. Rojo moved into the street to avoid any confrontation. Appellant rode up to Rojo, stopped, and ordered, "Give me a dollar." Rojo replied, "I don't have a dollar," and kept walking. Appellant then circled around Rojo, blocking his forward progress. Appellant again ordered, "Give me a dollar" and "I'm not playing around." Rojo looked to see if appellant had a weapon. He saw what appeared to be bottom of the handle of a handgun inside the pouch of appellant's black hooded sweatshirt. Rojo was scared and gave appellant the $3 he had in his pocket. Appellant then said, "I know you have more." Rojo pulled out his wallet, showed it to appellant, and handed the rest of his money over to appellant. Appellant rode off on his bike.

Rojo, walked back to his house on 23rd Street. He told his cousin, Ignacio Jaime, that he just been robbed. Jaime said to call the police, but Rojo instead wanted to look for appellant and to call police if they saw him.

2

Jaime then drove Rojo around in his truck looking for someone wearing a black sweatshirt, a black shirt, blue jeans, and a New York Yankees baseball cap, the clothing Rojo described his assailant wore at the time of the robbery. About 15 minutes later, Rojo saw appellant sitting on his bike and wearing the same clothes he had on at the time of the robbery. Appellant saw them, smiled, and rode off. As Jaime and Rojo followed, appellant turned, looked, and gestured with his empty hand like he was pointing a gun and firing at them three or four times. The two then stopped and called the police.

Five minutes later, Rojo and Jaime met Richmond Police Officer Ronald Vinson. Dispatch radioed the description of the suspect given to police earlier by Rojo to another Richmond police officer, Ramon Middleton, who saw appellant matching that description, riding a dirt bike.

Officer Vinson took Rojo and Jaime to the location where appellant had been detained. Officer Vinson separated the pair, and showed appellant to each of them. Rojo identified appellant as the man who robbed him, and Jaime identified appellant as the man they had pursued. Officer Middleton searched appellant and found two $20 bills and three $1 bills in his right front pocket. No gun was found.

During the trial, outside the presence of the jury, the court and counsel reviewed the jury instructions to be given. Everyone agreed that they would have to wait to hear testimony to determine whether CALCRIM No. 361, on "Failure to Explain or Deny Adverse Testimony," was applicable to the facts of the case. At that same time, the prosecutor withdrew his request to give CALCRIM No. 375, "Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, Etc." since he did not introduce any prior offenses.

On March 18, 2013, after the prosecution and the defense rested, and again outside the presence of the jury, the court reviewed with counsel the jury instructions to be given. The prosecutor withdrew his request to give CALCRIM No. 361.[2]

_____

[2] Appellant had chosen not to testify during the trial.

Subsequently, the court read the final instructions to the jury. Among the instructions read to the jury was CALCRIM No. 200, which stated that "[s]ome of the instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." The court also admonished the jury with CALCRIM No. 355, which told them that "[a] defendant has an absolute constitutional right not to testify."

The court also told the jury that it would provide jury instruction packets for them to take to the jury room and forms that the jurors could use to submit written questions to the court. The court did not read to the jury CALCRIM Nos. 361 or 375, although they appear in the record as part of the filed package of instructions given to the jury.

The jury found appellant guilty of second degree robbery, but also found the arming allegation not true.[3]

On April 16, 2013, the prior conviction allegation was tried to the court and found true. The court then imposed the lower term of two years on the robbery conviction and doubled it to four years. The court also imposed a five-year consecutive term under section 667, subdivision (a)(1) for the prior violent conviction, for a total aggregate state prison term of nine years.

Notice of appeal was timely filed on April 19, 2013.

### III.

### DISCUSSION

While both sides to this appeal agree that CALCRIM Nos. 361 and 375 had been withdrawn by counsel and were not read to the jury, they disagree whether the record sufficiently documents that these instructions were nevertheless delivered to the jury in the packet of written instructions given to it at the commencement of deliberations. We

---

[3] The allegation of use of a firearm (§ 12022.53, subd. (b)) had been earlier dismissed by the trial court.~(1CT 81, 1RT 19)~

4

conclude that the record supports appellant's assertion that these two withdrawn instructions were delivered to the jury as part of its instruction packet. Both CALCRIM Nos. 361 and 375 are contained in the packet on instructions titled "JURY INSTRUCTIONS GIVEN," and are absent from that packet titled "JURY INSTRUCTIONS NOT GIVEN." (Original capitalization.)

This having been the case, it was error for the court to have included these withdrawn instructions in the packet of written instructions delivered to the jury at the commencement of its deliberations. " 'It has long been the law that it is error to charge the jury on abstract principles of law not pertinent to the issues in the case. [Citation.] The reason for the rule is obvious. Such an instruction tends to confuse and mislead the jury by injecting into the case matters which the undisputed evidence shows are not involved.' (*People v . Jackson* (1954) 42 Cal.2d 540, 546-547 . . . .)" (*People v. Robinson* (1999) 72 Cal.App.4th 421, 428.)

However, that does not end the matter. Appellant must show prejudice, and we agree with respondent that he has not done so.

Initially we observe that the parties disagree as to what standard of review we must apply to resolve the issue of prejudice. Appellant contends that because the instruction erroneously given included CALCRIM No. 361, where appellant chose not to testify at trial, that instruction constituted an improper comment on his refusal to testify in violation of his right under *Griffin v. California* (1965) 380 U.S. 609, 616 (*Griffin*). Therefore, he argues that reversal is required unless we determine that this error did not contribute to the jury's verdict beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).) Appellant also asserts that even if the lower standard under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) applies to the error in giving CALCRIM No. 375, because it is joined with *Griffin* error, the error was cumulative and the higher standard applies to both. (*People v. Woods* (2006) 146 Cal.App.4th 106, 117.) Respondent argues that the lower, *Watson* standard of review applies.

In our estimation, it matters not which standard of review applies in this instance, because we conclude that under either *Chapman* or the *Watson* standard, the errors did

5

not prejudice appellant. "[G]iving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 67.)

Importantly, the court instructed the jury with CALCRIM No. 355, which told them that "[a] defendant has an absolute constitutional right not to testify." The court also instructed the jury on the presumption of innocence, and proof beyond a reasonable doubt. Among the instructions both read and submitted in written form to the jury was CALCRIM No. 200, which stated that "[s]ome of the instructions may not apply depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Jurors are presumed to follow a court's admonitions and instructions. (*Romano v. Oklahoma* (1994) 512 U.S. 1, 13 [improper admission of evidence did not deny due process in light of the court's jury instructions about the scope of evidence the jury was to consider]; *People v. Harris* (1994) 9 Cal.4th 407, 426 [" ' "The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant." ' "].)

There is no evidence to rebut this presumption. We note that the trial court also told the jury that it would provide jury instruction packets for them to take to the jury room and forms that the jurors could use to submit written questions to the court. At no time did the jury ask for clarification about the presence of either instruction included in their packet, or express any confusion about them whatsoever. Also, the prosecutor in closing argument made no argument or comment on the substance of CALCRIM Nos. 361 or 375, that might conceivably have fed any misapprehension or confusion. We must presume jurors are intelligent persons capable of understanding and applying a commonsense reading of instructions. (*People v. Laws* (1993) 12 Cal.App.4th 786, 796; *People v. White* (1987) 188 Cal.App.3d 1128, 1138-1139.)

6

Also relevant to the issue of potential prejudice is the very language of CALCRIM No. 361, which limits consideration of the failure to explain or deny adverse evidence "[i]f the defendant failed in his . . . testimony to explain or deny evidence against him . . . ." The fact that appellant did not testify makes it clear that this instruction does not apply to the circumstances of this trial.

Given all of these circumstances, we have no hesitation in concluding that appellant was not prejudiced by the apparently inadvertent inclusion of two inapplicable instructions in the jury's packet of written instructions.

Our conclusion is further reinforced by the fact that the evidence of guilt was strong. Eric Rojo identified appellant as the person who robbed him without real challenge. His cousin likewise identified appellant as the person they began following shortly after the robbery occurred. Appellant was dressed consistent with Rojo's description given to police when he called them, and appellant had on his person cash close to the amount of that given to him by Rojo. Indeed, appellant did not dispute that he asked for, and took money from Rojo, but instead contended merely that he was panhandling and that Rojo overreacted.

Lastly, dispelling any concern raised by appellant that the jury may have been prejudiced against him for a failure to "explain or deny adverse evidence" is the additional fact that the jury found the personal use of a firearm enhancement "not true." That finding makes it all the more clear that the jury did not impose on appellant any duty to explain what it was that Rojo saw in appellant's hoodie pocket, or why it was not in appellant's jacket as of the time he was later detained. The jury did just what was expected of it—it gave appellant the presumption of innocence and held the prosecutor to prove the case beyond a reasonable doubt.

## IV.
## DISPOSITION

The judgment and sentence are affirmed.

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
HUMES, J.