Filed 1/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br>　　　　Plaintiff and Respondent,<br>v.<br>REYNALDO MALDONADO,<br>　　　　Defendant and Appellant. | A161817<br><br>(San Mateo County<br>Super. Ct. No. SC065313A) |

Reynaldo Maldonado (appellant) appeals from the trial court's denial of his petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95).[1]  In 2013, appellant was convicted of first degree murder and the jury was not instructed on the natural and probable consequences and felony murder doctrines.  Appellant argues the jury nonetheless could have imputed malice to him based solely on his participation in a crime, relying on the jury instructions for aiding and abetting, implied malice, and lying-in-wait murder, and on the analysis in *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*).  We agree appellant has established a prima

---

[1] All undesignated section references are to the Penal Code. Section 1170.95 was renumbered section 1172.6, without substantive change, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For clarity, we will refer to the section by its current numbering.

1

facie case for resentencing relief, and reverse and remand for the trial court to issue an order to show cause.

BACKGROUND

*2013 Conviction*

In 2001, about 10:00 a.m. on the morning of the murder, Erick Morales and the victim were seen walking away from the high school they both attended. (*People v. Maldonado* (July 29, 2016, A141242) [nonpub. opn.].) That afternoon, the victim's body was found in a storage locker with multiple stab wounds to the chest and neck. (*Ibid.*) Appellant called the police and anonymously reported witnessing the killing; when subsequently interviewed by police he reported seeing a man with blood on his chest who may have been the killer. (*Ibid.*) Police were later unable to locate appellant, who apparently left the state a few weeks after the murder. (*Ibid.*)

In the following years, appellant told one person he lured the victim away and stabbed him with the help of a friend; he told another person the killing was a friend's idea and the friend stabbed the victim with appellant's help. (*People v. Maldonado, supra,* A141242.) He told both people that he and his friend buried their bloody clothes and the knife in their yard, and that he had a photograph of his friend with the victim's body. (*Ibid.*) Police found a sweatshirt, knife, and cell phone buried in the yard of appellant's former residence, and found a photograph of Morales with the victim's body in appellant's residence at the time of his arrest. (*Ibid.*) Appellant testified at trial that he did not kill the victim or help Morales kill the victim, but that Morales brought him to the victim's body after the killing and appellant took a photograph and helped Morales bury the evidence. (*Ibid.*)

Appellant was charged with first degree murder (§ 187, subd. (a)), with a special circumstance allegation that the murder was committed by means

of lying in wait (§ 190.2, subd. (a)(15)).  The jury was instructed on two theories of first degree murder: the murder was willful, deliberate and premeditated; and the murder was committed by lying in wait.  The jury was also instructed on direct aiding and abetting.  (See CALCRIM No. 401.)  The jury was not instructed on felony murder or the natural and probable consequences doctrine.

The jury convicted appellant of first degree murder, but found the lying-in-wait special circumstance not true.  This court affirmed the judgment.  (*People v. Maldonado, supra,* A141242.)

*2020 Resentencing Petition*

In September 2020, appellant filed a petition for resentencing pursuant to section 1172.6.  The trial court appointed counsel for appellant.  The People filed an opposition, submitting the jury instructions and verdict forms from appellant's trial and this court's opinion on direct appeal.  The trial court summarily denied the petition, finding the record conclusively proved appellant's murder conviction was not obtained under a felony murder or natural and probable consequences theory.

## DISCUSSION

I.    *Section 1172.6*

In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, the Legislature "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule."  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  "Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended.  (See Pen. Code, § 1172.6 ....)  Under newly enacted section 1172.6, the process begins with the filing of a

3

petition containing a declaration that all requirements for eligibility are met (*id.*, subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3))." (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. omitted.)

While this appeal was pending, the Governor signed into law Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), which "expanded the scope of those changes to encompass, among other things, murder convictions 'under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime.*' " (*Langi, supra,* 73 Cal.App.5th at p. 978; see Stats. 2021, ch. 551, § 2.)[2] The Senate Bill 775 amendments apply to appellant's appeal. (See *People v. Porter* (2022) 73 Cal.App.5th 644, 652 ["[T]he trial court's order denying the petition is not yet final and Senate Bill No. 775 has already taken effect. Therefore, the revisions set forth in Senate Bill No. 775 apply to the instant petition."]; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006 ["New legislation generally applies to all judgments which are not final as of the effective date of the new statute."].)

Section 1172.6, subdivision (c), provides that if a resentencing petition includes the required components, the court must "determine whether the petitioner has made a prima facie case for relief." "While the trial court may look at the record of conviction ... to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas

---

[2] We grant appellant's unopposed request for judicial notice of a legislative analysis of Senate Bill 775.

corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra,* 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] ... [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.)

If the court determines the petitioner made a prima facie case for relief, "the court shall issue an order to show cause" and "hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction ...." (§ 1172.6, subds. (c), (d)(1).)

II.    *Prima Facie Case*

Appellant argues that, even though the jury was not instructed on the felony murder or natural and probable consequences doctrines, he may nonetheless have been convicted on a theory under which malice was imputed to him based solely on his participation in a crime. Specifically, appellant points to the instructions for aiding and abetting a lying-in-wait murder. We will first discuss the crime of aiding and abetting a lying-in-wait murder, and then turn to the jury instructions given in appellant's case.

5

A.    *Aiding and Abetting Lying-In-Wait Murder*

"To prove first degree murder of any kind, the prosecution must first establish a murder within section 187—that is, an unlawful killing with malice aforethought.  [Citations.]  Thereafter, pursuant to section 189, the prosecution must prove the murder was perpetrated by one of the specified statutory means, including lying in wait …."  (*People v. Stanley* (1995) 10 Cal.4th 764, 794 (*Stanley*).)  To prove the murder was perpetrated by means of lying in wait, the prosecution must prove " ' " '(1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage….' " ' "  (*People v. Russell* (2010) 50 Cal.4th 1228, 1244.)  "[T]he lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation."  (*People v. Stevens* (2007) 41 Cal.4th 182, 202, fn. 11.)

Unlike first degree premeditated murder, "nothing in section 189 requires the lying in wait to have been done with the intent to kill."  (*People v. Laws* (1993) 12 Cal.App.4th 786, 794 (*Laws*).)  Instead, "If the act which the perpetrator intends to commit while lying in wait results in a killing which satisfies the elements of murder, it is immaterial whether the perpetrator intended to kill …."  (*Id.* at p. 795.)[3]  "Ordinarily, … [an implied

---

[3] In contrast, " 'The lying-in-wait special circumstance requires "*an intentional murder*, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage…." ' "  (*People v. Cage* (2015) 62 Cal.4th 256, 278, italics added (*Cage*).)  Because the jury found the special circumstance lying-in-wait allegation not true, it did not necessarily find appellant intended to kill the victim.

malice] killing would be murder of the second degree.  However, if this murder is perpetrated by means of lying in wait, it is, by statutory definition, murder of the first degree." (*Id.* at p. 794.)[4]  "All that is required of lying in wait is that the perpetrator exhibit a state of mind equivalent to, but not identical to, premeditation and deliberation.  [Citation.]  This state of mind simply is the intent to watch and wait for the purpose of gaining advantage and taking the victim unawares in order to facilitate the act which constitutes murder.  [Citation.]  It does not include the intent to kill ...." (*Id.* at p. 795.)

We turn now to aiding and abetting an implied malice murder. "[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea.  [Citation.]  In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act.  For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life endangering act.  Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the

---

[4] "The Legislature could have concluded that an unlawful killing of a human being with implied malice aforethought (i.e., an unintended killing which results from an intentional act inherently dangerous to human life committed with knowledge of the danger to, and with conscious disregard for, human life [citation]) is more deplorable than second degree murder when it is perpetrated by means of lying in wait." (*Laws, supra,* 12 Cal.App.4th at p. 793; see also *Stanley, supra,* 10 Cal.4th at p. 795 [" 'Murder committed by lying in wait has been "anciently regarded ... as a particularly heinous and repugnant crime." [Citation.]' [Citation.]  The moral culpability of the offender who murders by lying in wait justifies fixing the murder in the first degree."].)

7

perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*People v. Powell* (2021) 63 Cal.App.5th 689, 712–713, fn. omitted (*Powell*).) Direct aiding and abetting an implied malice murder remains a valid theory after the amendments of Senate Bills 1437 and 775. (*People v. Gentile* (2020) 10 Cal.5th 830, 850 ["[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life."].)

B.      *The Jury Instructions Permitted Conviction Based on Imputed Malice*

We now turn to whether the jury instructions permitted conviction based on an impermissible theory of imputed malice.

The jury was instructed, with respect to malice, "There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. The defendant acted with express malice if he unlawfully intended to kill. The defendant acted with implied malice if: [¶] One, he intentionally committed an act; [¶] Two, the natural and probable consequences of that act were dangerous to human life; [¶] Three, at the time he acted he knew his act was dangerous to human life; [¶] And, Four, he deliberately acted with conscious disregard for human life." (See CALCRIM No. 520.)

As to lying in wait murder, the jury was instructed: "The defendant murdered by lying in wait if: [¶] One, he concealed his purpose from the person killed; [¶] Two, he waited and watched for an opportunity to act; [¶]

8

And, Three, then from a position of advantage he intended to and did make a surprise attack on the person killed. [¶] The lying in wait does not need to continue for any particular period of time, but its duration must be substantial enough to show a state of mind equivalent to deliberation or premeditation;" "Deliberation means carefully weighing the considerations for and against the choice, and knowing the consequences deciding to act. An act is done with premeditation if the decision to commit the act is made before the act is done. A person can conceal his or her purpose even if the person killed is aware of the person's physical presence. The concealment can be accomplished by ambush or some other secret plan." (See CALCRIM No. 521.)

Finally, on aiding and abetting, the jury was instructed pursuant to CALCRIM No. 401: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] Number One, the perpetrator committed the crime; [¶] Two, the defendant knew the perpetrator intended to commit the crime; [¶] Three, before or during the commission of the crime the defendant intended to aid and abet the perpetrator in committing the crime; [¶] And, Four, the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows the perpetrator's unlawful purpose and he or she specifically intends to and does in fact aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime. If all of these requirements are proved the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

In *Powell,* the Court of Appeal determined that CALCRIM No. 401, the same aiding and abetting instruction used here, was "not tailored for" aiding

9

and abetting an implied malice murder. (*Powell, supra,* 63 Cal.App.5th at p. 714.) Specifically, while CALCRIM No. 401 refers to an intent to aid and abet a "crime," the aider and abettor in fact needs to "intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." (*Powell,* at p. 714.)

In *Langi, supra,* 73 Cal.App.5th 972, the Court of Appeal found this poor tailoring left open the possibility that the jury convicted the defendant based on a theory of imputed malice. In *Langi,* the defendant and others beat up the victim, who died after a punch caused him to fall and hit his head. (*Id.* at p. 975.) The jury was given a CALJIC instruction "identical in relevant substance" to "[t]he standard aiding-and-abetting instruction given in *Powell*" and here, CALCRIM No. 401. (*Langi,* at p. 983.)[5] As here, the jury was not instructed on the natural and probable consequences doctrine. (*Id.* at p. 981.) *Langi* noted the aiding and abetting instruction "does not state that the aider and abettor must himself have known that the act he aided was life-threatening, or that he must himself have acted with indifference to human life." (*Id.* at p. 982.) The court agreed with *Powell*'s conclusion that "the standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction

---

[5] In *Langi,* the jury was instructed with CALJIC No. 3.01 as follows: " 'A person aids and abets the commission ... of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, ... [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime.' " (*Langi, supra,* 73 Cal.App.5th at p. 981.)

creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi,* at p. 982.)

*Langi* concluded the jury instructions permitted the appellant to be convicted of aiding and abetting second degree murder without a finding that he acted with conscious disregard for human life: "The aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts '*with knowledge of the unlawful purpose of the perpetrator*, and ... with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01, italics added.)  However, as noted above, the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death.  Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim.  Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill.  If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent.  Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement.  Thus, under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, appellant need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or

11

not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Langi, supra,* 73 Cal.App.5th at pp. 982–983.)

Here, the jury was instructed that a person aids and abets a crime if "he or she knows the perpetrator's unlawful purpose and he or she specifically intends to and does in fact aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime." The murder by lying in wait instruction did not instruct the jury that the perpetrator needed to intend to cause death. While the perpetrator must have concealed his purpose from the victim, waited and watched for an opportunity to act, intentionally made a surprise attack from a position of advantage, and have lain in wait for a substantial enough duration to show a state of mind equivalent to deliberation or premeditation, the jury may have found the perpetrator's *purpose* was only to injure or intimidate the victim in a surprise attack. Thus, using *Langi*'s reasoning, the jury could have construed the instructions such that, "to be guilty as an aider and abettor of [lying in wait first degree] murder, appellant need only have intended to encourage the perpetrator's intentional act—in this case, [a surprise attack on the victim]— whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Langi, supra,* 73 Cal.App.5th at p. 983.)

We emphasize the jury was not *required* to construe the instructions in this manner. The jury could have construed the instructions as requiring the aider and abettor know the perpetrator intended to commit the act *and* know the perpetrator acted with implied malice—in other words, know the perpetrator knew the act was dangerous to human life and deliberately disregarded the risk to life. Thus, the jury could have construed the

instructions as requiring that, to be guilty of aiding and abetting an implied malice lying in wait murder, appellant must have intended to encourage both the act and the perpetrator's deliberate disregard that the act was dangerous to human life and, in so doing, appellant acted with implied malice. However, the jury also could have reasonably construed the instructions in a manner permitting it to convict appellant under a theory of imputed malice.

The People argue *Powell* and *Langi* are distinguishable because the convictions in those cases were for second degree murder, while appellant was convicted of first degree murder. The distinction is immaterial because, as explained above, first degree lying-in-wait murder can be based on a theory that the perpetrator acted with implied malice rather than an intent to kill. *Powell* and *Langi*'s analyses of the standard instructions for aiding and abetting an implied malice murder apply here.

The People also argue a finding that appellant knew of the perpetrator's intent to conduct a surprise attack and intended to aid that purpose "demonstrated the necessary conscious disregard for human life required for implied malice ...." We are not persuaded that a finding appellant knew the perpetrator planned to make a surprise attack and intended to aid such an attack is necessarily equivalent to a finding that appellant knew the surprise attack was dangerous to human life and acted with conscious disregard for life.[6]

---

[6] We note the Supreme Court has stated, " '[M]urder ... "by means of" lying in wait ... requires ... a wanton and reckless intent to inflict injury likely to cause death.' " (*Cage, supra,* 62 Cal.4th at p. 278; but see *Laws, supra,* 12 Cal.App.4th at p. 795, fn. 2 [characterizing similar statements as "dictum"].) However, the jury instructions provided in this case set forth no such intent requirement.

The People further contend the instructions required the jury to find that appellant "knew the perpetrator's intent to at a minimum perpetrate a lying-in-wait attack with implied malice and a state of mind equivalent to deliberation or premeditation ...." The instructions given to the jury do not so require.[7] The jury was instructed an aider and abettor must "kn[o]w the perpetrator intended to commit the crime" and intend to aid "the perpetrator's unlawful purpose." For implied malice lying-in-wait murder the only intentions required of the perpetrator were (1) the intent to commit an act (while knowing the act was dangerous to human life and acting with conscious disregard for life), and (2) the intent to make a surprise attack. The instructions do not specify that the perpetrator must have *intended* that the duration of the lying in wait be substantial enough to show a state of mind equivalent to deliberation or premeditation, but just that the duration in fact was so substantial.

C.    *There Is a Reasonable Likelihood the Jury Construed the Instructions to Permit Conviction Based on Imputed Malice*

For the first time in a petition for rehearing, the People rely on *Boyde v. California* (1990) 494 U.S. 370 (*Boyde*) to argue that we must decide whether there is a *reasonable likelihood* the jury construed the instructions to permit conviction under a prohibited theory, and to further argue there is no such reasonable likelihood here. We requested appellant file a response, granted rehearing, and now reject the People's argument.

As an initial matter, the contention is forfeited. " 'It is well settled that arguments ... cannot be raised for the first time in a petition for rehearing.' "

---

[7] Whether such knowledge is an element of aiding and abetting a lying-in-wait murder is not before us, and we express no opinion on the matter.

(*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092, abrogated on another ground by *Martinez v. Combs* (2010) 49 Cal.4th 35.)

In any event, assuming the reasonable likelihood standard applies, it is met here.[8] "Although a defendant need not establish that the jury was more likely than not to have been impermissibly" directed by the ambiguous instruction, the standard is not met if there is "only a possibility" the jury was so directed. (*Boyde, supra,* 494 U.S. at p. 380.) The People do not dispute the ambiguity of the instructions, or argue other instructions clarify the ambiguity. Instead, the People point solely to three discrete statements in the prosecutor's closing argument: to convict appellant as an aider and abettor, appellant "needs to know that Morales intended to commit that murder;" appellant "was either wielding the knife or he was holding the victim so Mr. Morales could kill him;" and for purposes of implied malice appellant "knew the act was dangerous to life at the time" and "deliberately acted with conscious disregard for life." While these statements urge conviction based on non-imputed malice, they were three brief statements in a lengthy closing argument taking up more than 70 pages of the reporter's transcript. Given the brevity of these comments and the highly confusing nature of the instructions, we are persuaded there was more than a possibility that the jury construed the instructions to permit a conviction based on imputed malice. (Cf. *People v. Williams, supra,* 86 Cal.App.5th at

---

[8] Appellant argues the reasonable likelihood standard does not apply to ambiguous jury instructions for purposes of determining whether a section 1172.6 prima facie showing has been made. Although the reasonable likelihood standard originated in the direct appeal context, at least two published cases have applied it in making the section 1172.6 prima facie determination. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1256; *People v. Ervin* (2021) 72 Cal.App.5th 90, 107.) We need not, and do not, decide whether or to what extent the standard applies in section 1172.6 cases.

p. 1257] [no reasonable likelihood jury construed aiding and abetting instruction to permit conviction based on imputed malice because, in light of other instructions and jury's true finding as to a special circumstance requiring the defendant had the intent to kill, "the record of conviction conclusively demonstrates" the defendant is ineligible for resentencing]; *Boyde, supra,* 494 U.S. at pp. 378, 383 [no reasonable likelihood jury construed instruction in capital penalty phase that they could consider " '[a]ny other circumstance which extenuates the gravity of the crime' " to limit their consideration to "evidence that was *related to the crime,*" excluding non-crime-related mitigation evidence, in light of other instructions and the fact that "[a]ll of the defense evidence presented at the penalty phase—four days of testimony consuming over 400 pages of trial transcript—related to petitioner's background and character, and we think it unlikely that reasonable jurors would believe the court's instructions transformed all of this 'favorable testimony into a virtual charade' "].)

The ultimate question before us is whether " 'the record, including the court's own documents, "contain[s] facts refuting the allegations made in the [section 1172.6] petition." ' " (*Lewis, supra,* 11 Cal.5th at p. 971.) Only "[i]f the petition and record in the case *establish conclusively that the defendant is ineligible for relief*" may the trial court dismiss the petition. (*People v. Strong, supra,* 13 Cal.5th at p. 708, italics added.) Here, given the ambiguous jury instructions, and after considering the prosecutor's closing argument, we cannot say the record conclusively establishes appellant is ineligible for relief.

Accordingly, "an evidentiary hearing is required. At that hearing, the court may find that appellant was the actual killer or that he was an aider and abettor who facilitated the killing with personal disregard for human life, in which case his petition will be denied. If the prosecution fails to prove that

16

he was either, he will be entitled to relief." (*Langi, supra,* 73 Cal.App.5th at p. 984.)

## DISPOSITION

The order denying the petition is reversed.  The matter is remanded with directions to issue an order to show cause and hold an evidentiary hearing.


_____
SIMONS, Acting P.J.


We concur.



_____
BURNS, J.



_____
WISEMAN, J.[*]



(A161817)

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**People v. Maldonado (A161817)**

Trial Judge:        Hon. Robert D. Foiles


Trial Court:        San Mateo County Superior Court


Attorneys:

Scott N. Cameron, Attorney at Law, under appointment by the First District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, and Lisa Ashley Ott, Deputy Attorney General, for Plaintiff and Respondent.