Filed 4/14/26  P. v. Macias CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085448 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB23002985) |
| JOSE MACIAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Affirmed.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Daniel Rogers, Acting Senior Assistant Attorney General, Arlene A. Sevidal, Supervising Deputy Attorney General and Susan Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

After he learned that his wife, S.M., was having an affair, Jose Macias shot her twice in the back, killing her, when no one else was home. At trial the prosecution proceeded on two theories of first degree murder: murder that was willful, deliberate, and premeditated, and murder committed by lying in wait. The jury convicted him of first degree murder (Pen. Code,[1] § 187, subd. (a)) and found true several firearm enhancements. The trial court sentenced Macias to 25 years to life.

On appeal Macias contends the trial court failed to instruct the jury that lying in wait murder required the jury to find that Macias acted with a state of mind more culpable than that required to prove second degree murder. We conclude that the jury instructions did not omit this element of lying in wait murder and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Macias and S.M. had been married for over 40 years. Macias was a welder and S.M. did housekeeping. Macias had been the primary breadwinner of the family but he stopped working in 2014 after a series of heart attacks.

Macias and S.M. lived in San Bernardino County with their three adult sons, including J.M. and E.M. In the beginning of 2023, J.M. and his siblings learned that their mother was having an affair. In June, J.M. and his sister told Macias about the affair. J.M. told his father the affair had been going on for months and that S.M. did not want to stop seeing the other man. Macias subsequently confronted his wife about the affair and they argued over it frequently.

---

[1]     Undesignated statutory references are to the Penal Code.

2

Macias asked J.M. about getting a gun for self-defense. Macias worried the other man would hurt or kill Macias in order to be with S.M. J.M. and his siblings refused to help Macias get a gun.

On August 10, 2023, around 6:00 p.m., J.M. and E.M. went out for drinks at a bar about a block and a half away from their home. Their other brother was at work. When J.M. and E.M. left, their mother was at the kitchen table eating dinner and Macias was on the couch eating dinner and watching TV.

About thirty minutes after J.M. and E.M. got to the bar, Macias called J.M. and told him, "I already killed your mother." J.M. asked Macias what he meant, and Macias said, "I already did it." J.M. and E.M. rushed home.

J.M. walked inside the house and saw his mother lying on the floor near the kitchen, face down and surrounded by blood. Macias was lying down on his side and had a gunshot wound to his chest. J.M. asked Macias why he did this, and Macias, answered, "There, it's all over."

J.M. saw a gun on the ground about a foot away from Macias's head. J.M. moved the gun to the couch. Macias later told J.M. that he shot himself because he did not want his grandchildren to know he shot S.M.

Police arrived at the house around 7:47 p.m. S.M. was found lying face down on the ground with several gunshot wounds to her upper back. She was not breathing or moving and had no pulse. She was on the patio steps, with her feet in the kitchen and her legs lying through the doorway from the kitchen. Macias was lying on his side with a gunshot wound to the chest. His breathing was labored. There was no sign of a struggle between them, such as bruising or scrapes on the victim, or items knocked over in the home.

Police recovered a semi-automatic nine-millimeter caliber Luger pistol and three fired nine-millimeter cartridges from the scene.

S.M.'s autopsy revealed two gunshot entrance wounds: one in the upper right side of her back and one in the left side of the middle of her back. The bullets exited through her chest and abdomen. The gunshot wounds were the cause of death, and the manner of death was homicide.

Macias was charged with first degree murder. The court instructed the jury on express and implied malice with CALCRIM No. 520. As to implied malice, the instruction informed the jury: "The defendant had *implied malice* if: [¶] 1. He intentionally committed the act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life."

The court instructed the jury on first degree murder with CALCRIM No. 521 as follows: "The [d]efendant has been prosecuted for first-degree murder under two theories: [¶] 1) willful, deliberate, and premeditated and 2) the murder was committed by lying in wait. Each theory of first degree murder has different requirements and I will instruct you on both."

As to lying in wait murder, over objection[2] the court instructed the jury: "The defendant is guilty of first degree murder if the People have proved that the defendant committed murder while lying in wait or immediately thereafter. The defendant committed murder by lying in wait if: [¶] 1. He concealed his purpose from the person killed; [¶] 2. He waited and watched for an opportunity to act; [¶] AND [¶] 3. Then, from a position of advantage, he intended to and did make a surprise attack on the person killed." [¶] "The lying in wait does not need to continue for any particular

---

[2] Defense counsel objected that there was insufficient evidence to give the lying in wait instruction and objected to giving CALCRIM No. 521 as written. The court overruled the objections.

4

period of time, but its duration must be substantial enough to show a state of mind equivalent to deliberation or premeditation. *Deliberation* means carefully weighing the considerations for and against a choice, and, knowing the consequences, deciding to act. An act is done with *premeditation* if the decision to commit the act is made before the act is done." [¶] "A person can conceal his or her purpose even if the person killed is aware of the person's physical presence." [3]

After the instruction set forth the instructions for the two types of first degree murder, it closed with the following two paragraphs:

"The requirements for second degree murder based on express or implied malice are explained in [CALCRIM No.] 520. [¶] The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder."

The jury convicted Macias of first degree murder and found true that, in the commission of the murder, he personally used a handgun within the meaning of section 12022.5, subdivision (b), personally and intentionally discharged a handgun within the meaning of section 12022.53, subdivision

---

[3] The transcript's punctuation introduces confusion as to how the court read this instruction. The transcript shows: "A person can conceal his purpose. If the person killed is aware of the person's physical presence, the requirements for second-degree murder based on implied malice are explained in [CALCRIM No.] 520." Because there was every indication the court was reading from the written instructions, a comparison with this part of the written instruction recommends the following punctuation and formatting: "A person can conceal his purpose [even] if the person killed is aware of the person's physical presence. [¶] The requirements for second-degree murder based on implied malice are explained in [CALCRIM No.] 520." The court thus apparently omitted the word "even" after "purpose" in its reading of the instruction.

5

(c), and personally and intentionally discharged a handgun which caused death under section 12022.53, subdivision (d).  The trial court struck the firearm allegations and sentenced Macias to 25 years to life.

## DISCUSSION

### A.  *Legal Principles*

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Solomon* (2010) 49 Cal.4th 792, 822.)

"A trial court must instruct on each element of a charged offense, even when the defendant does not propose a complete instruction or object to the court's failure to provide one."  (*People v. Brown* (2023) 14 Cal.5th 453, 461 (*Brown*).)  We consider whether "there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts." (*People v. Kelly* (1992) 1 Cal.4th 495, 525–526.)  " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.)

The omission of an element of an offense from a jury instruction violates a defendant's constitutional right to a jury trial and requires reversal unless we conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.  (*Brown, supra*, 14 Cal.5th at p. 473; *Chapman v. California* (1967) 386 U.S. 18, 24.)

### B.  *Elements of First Degree Lying in Wait Murder*

6

" 'To prove first degree murder of any kind, the prosecution must first establish a murder within section 187—that is, an unlawful killing with malice aforethought.' " (*People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1262 (*Maldonado*).) Malice is express when there is an intent to unlawfully kill. (§ 188, subd. (a)(1).) "Malice is implied when the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " (*People v. Knoller* (2007) 41 Cal.4th 139, 143.) Courts have described this as acting with a "wanton disregard for human life" or "conscious disregard for human life," phrases that articulate the same standard as implied malice. (*Knoller*, at pp. 143, 152.)

" 'Ordinarily, . . . [an implied malice] killing would be murder of the second degree. However, if this murder is perpetrated by means of lying in wait, it is, by statutory definition, murder of the first degree.' " (*Maldonado, supra*, 87 Cal.App.5th at pp. 1262-1263; § 189, subd. (a).) "All that is required of lying in wait is that the perpetrator exhibit a state of mind equivalent to, but not identical to, premeditation and deliberation. [Citation.] This state of mind simply is the intent to watch and wait for the purpose of gaining advantage and taking the victim unawares in order to facilitate the act which constitutes murder." (*People v. Laws* (1993) 12 Cal.App.4th 786, 795.)

C. *Analysis*

Macias contends his first degree murder conviction must be reversed because CALCRIM No. 521 omitted an element of lying in wait murder. Relying on the California Supreme Court's recent decision in *Brown, supra*, 14 Cal.5th 453, he insists that the instruction should have informed the jury

7

that Macias must have acted with state of mind more culpable than the malice required for a second degree murder conviction. We conclude that CALCRIM No. 521 did not omit this element of the mental state required for first degree lying in wait murder.

CALCRIM No. 520 informed the jury that express or implied malice is a necessary element of murder. It stated that the defendant had express malice if he unlawfully intended to kill, and he had implied malice if he intentionally committed an act, the natural and probable consequences of which were dangerous to human life, with knowledge at the time he acted that this act was dangerous to human life, and he acted deliberately with conscious disregard for human life.

CALCRIM No. 521 required proof of additional elements to elevate the murder to first degree. It instructed Macias's jury that to convict him of first degree murder on a theory of lying in wait, it had to find that Macias concealed his purpose from the person killed, waited and watched for an opportunity to act, and, from a position of advantage, intended to and did make a surprise attack on the person killed. He also had to do so in a manner sufficient to "show a state of mind equivalent to deliberation or premeditation."

In *Brown*, after the defendant's baby died with traces of methamphetamine in her system, the defendant was charged with first degree murder under section 189 by means of poison for breastfeeding her baby while taking methamphetamine. (*Brown, supra*, 14 Cal.5th at pp. 455-56.) The case required the court to address "what mental state in the administration of poison is required to elevate a poison murder to the first degree." (*Brown,* at p. 464)

8

Starting with the language of section 189, the court noted, "We previously have interpreted this language to require proof of a mental state more culpable than the malice required for second degree murder, in keeping with the Legislature's determination that murders perpetrated by these means warrant the greater punishment reserved for first degree murder." (*Brown, supra*, 14 Cal.5th at 456.) The *Brown* court recognized it had already addressed the "more culpable" mental state required for two of section 189's other means to perpetrate first degree murder: lying in wait and torture. As to lying in wait murder, existing case law established " 'it is not sufficient to merely show the elements of waiting, watching and concealment. It must also be shown that the defendant did those physical acts with the intent to take [the] victim unawares and for the purpose of facilitating [the] attack.' " (*Brown, supra*, 14 Cal.5th at p. 456.) The *Brown* court continued, "[w]e have also established that the defendant must act with a ' "wanton and reckless intent to inflict injury likely to cause death," ' [citation] and the period of lying in wait must be sufficient to show that the defendant had ' " 'a state of mind equivalent to premeditation or deliberation.' " ' " (*Brown, supra*, 14 Cal.5th at p. 465.) These "specific showings of the defendant's mental state in lying in wait" serve as the " 'functional equivalent of' a premeditated, deliberate intent to kill" and thus satisfy the heightened mental state necessary for a finding of first degree murder. (*Ibid.*)

After reviewing the mental states required for torture and lying in wait murder, the *Brown* court reasoned that first degree murder by poison required a "similar state of mind requirement—one equivalent in turpitude to willful, deliberate, premeditated intent to kill" as those crimes already required. To convict of poison murder, the court concluded the trial court should have informed the jury "it had to find that [the defendant] deliberately

9

gave her newborn daughter poison with the intent to kill her or inflict injury likely to cause her death." (*Brown, supra*, 14 Cal.5th at pp. 467, 472.)

*Brown* thus did not, as Macias contends, add a mental state element to lying in wait murder. Instead, *Brown* expressly relied on existing case law establishing that the elements of lying in wait murder serve as the functional equivalent of a premeditated and deliberate intent to kill. CALCRIM No. 521 required the jury to find that Macias carried out the crime through waiting, watching, and concealment. As *Brown* noted, these acts by themselves would be insufficient. (*Brown, supra*, 14 Cal.5th at p. 456.) But having concealed his purpose from his victim, and waited and watched for his opportunity to act, Macias had to gain a "position of advantage" over his victim and act "from that position of advantage," thus exploiting the favorable position he had gained. He had to, from the position of advantage, have the intent to make a "surprise attack" on S.M.—in other words, to act "with the intent to take [the] victim unawares." (*Brown, supra*, 14 Cal.5th at p. 465.) All of this had to be carried out in a manner that showed " ' "a state of mind equivalent to deliberation or premeditation." ' " (See *ibid.*) The state of mind terms were further defined for the jury: "*Deliberation* means carefully weighing the considerations for and against a choice, and, knowing the consequences, deciding to act. An act is done with *premeditation* if the decision to commit the act is made before the act is done."

Macias contends the trial court "instructed the jury that the mental state requirement for first degree murder by means of lying in wait was the same 'express or implied malice' required for second degree murder" and argues it was reasonably probable the jurors interpreted the court's written or oral instruction to mean that a first degree murder conviction by means of lying in wait could be based on the mental state required for second degree

10

murder.  We do not find support for such a reading.  Looking at the entirety of CALCRIM No. 521 as written or delivered, the jury would have understood that to find first degree murder by lying in wait, it had to find Macias met the three predicate elements listed in that instruction for lying in wait, including the intent to make a surprise attack on the person killed, and that he did so in a manner sufficient to show a mental state "equivalent to deliberation or premeditation."  This required a higher degree of culpability than just the malice required for second degree murder.

If the People failed to prove that Macias met all the elements of lying in wait—even if the jury believed Macias acted with express or implied malice— the last two paragraphs of the instruction made clear that the jury could not convict him of first degree murder and had to turn to the instruction for second degree murder in CALCRIM No. 520.

Even if the court misread the jury instruction and combined the last phrase about concealment with the following sentence about second degree murder—which we doubt, attributing this instead to a scrivener's choice in the transcript's punctuation (see *ante*, fn. 3)—we do not see a reasonable likelihood that such an elision would lead a jury to believe that the mental state for second degree murder was sufficient for first degree lying in wait murder.  The transcript took down the court's statement as follows:  "If the person killed is aware of the person's physical presence, the requirements for second-degree murder based on implied malice are explained in [CALCRIM NO.] 520."  On its face, a fair reading of this statement would be that if the People had not proven concealment—that is, the victim was aware of Macias's presence—then the crime was only second degree murder.

In any case, the jury received in writing the properly punctuated and formatted CALCRIM No. 520.  To the extent a discrepancy exists between the

11

written and oral versions of jury instructions, the written instructions provided to the jury will control. *(People v. Mills* (2010) 48 Cal.4th 158, 201.)

We conclude the instructions did not improperly inform the jury that a conviction for lying in wait could be based on the mental state required for second degree murder.[4]

Since we find no instructional error we need not address prejudice.

DISPOSITION

We affirm the judgment.

O'ROURKE, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

---

[4]    Macias does not argue that CALCRIM No. 521 failed to inform the jury that the acts of watching, waiting, and concealment must be done "with the intent to take the victim by surprise to facilitate the infliction of injury likely to cause death." (*Brown, supra,* 14 Cal.5th at pp. 456–457.)  We express no view on this question because the issue has not been raised on appeal.